## Manning v. Lewis.

(Decided November 2, 1923.)

### Appeal from Clay Circuit Court.

1. Elections—Evidence Held to Show Casting of Illegal Votes.—In an election contest between rival candidates for Republican nomination for office of circuit judge, evidence held not sufficient to show that illegal ballots were cast for contestee.

2. Elections—No Deprivation of Nomination by Expenditure of Money Without Knowledge or Request, Under Corrupt Practice Act.—Under the Corrupt Practice Act, a candidate should not be deprived of his nomination because some loyal or enthusiastic friend spends money without his knowledge in bringing before the voters the efficiency of the espoused candidate for the office, and the manner in which he proposes to perform his duties if

elected, though expenditure is in excess of the limit allowed by the statute.

H. C. FAULKNER, H. C. HAZELWOOD and THOMAS D. TIN-SLEY for appellant.

H. C. GILLIS, JOHNSON & HAMILTON and J. B. WALL for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The parties to this litigation were rival candidates for the Republican nomination at the primary election in August, 1923, for the office of circuit judge for the Twenty-seventh judicial district of Kentucky, composed of the counties of Laurel, Clay and Jackson. The board of canvassers declared the appellant the nominee by a majority of 219 votes. In due time the appellee filed this contest proceeding, charging that contestee, and appellant, had violated the "Corrupt Practice Act," and that in a number of named precincts in the district he received illegal votes on account of the voters casting them being Democrats and affiliated with that party; that some of the votes he received were cast by non-residents of the district in which they voted, while others were infants and otherwise disqualified from voting, and that a great number of named voters in the various precincts had cast their ballots openly, or procured the officers of the election to stamp them without complying with the law authorizing it. It was also charged that in some of the precincts named there were no booths provided in which the voter might mark his ballot and that the voting at them was done openly, and for those various reasons there was no legal nominating election held in those precincts.

After denying the grounds contained in the answer, the notice and petition set up similar ones in a counter-contest. Issues upon all the charges and counter-charges were made and a vast amount of proof was taken, consisting of nearly 5,000 pages. The cause was submitted to a special judge, appointed to hear and decide it, but the proof was unfinished at the time he rendered his judgment, which was in favor of the contestant. It was immediately superseded, followed by this appeal. Much of the proof theretofore taken but thereafter transcribed by the stenographer who took it was not before him.

Practically all of the testimony which was not transcribed at the hearing below was filed and made a part of the record in this court after the appeal, which was filed here on October 27, and the case was argued on October 30. The special judge who tried the case was of the opinion that the charges of the contestant were sustained as to Cane creek, Big creek, Bear creek and Bull Skin precincts in Clay county, and as to Horse lick and Annville precincts in Jackson county, and he threw out the entire vote cast at those precincts, which resulted in the nomination of the contestant by something like 300 votes. Because of the urgency of the case three members of the court have diligently investigated the record since its submission and it necessarily was hurriedly done. However, counsel greatly assisted us in giving the names of the witnesses who testified to the conditions under which the election was held at the thrown-out precincts and our hurried investigation forces us to the conclusion that the court was in error in throwing out any of them, except Annville precinct in Jackson county, which gave appellant 71 majority and would reduce his certified majority to 148 votes. It is conceded by contestant and his counsel that he received more votes in the districts which were openly stamped than did contestee. Utilizing that concession we devoted no part of the limited time at our disposal to an investigation of that feature of the case.

We read the testimony relative to a number of precincts wherein contestee was charged with receiving Democratic votes and we do not find the proof sufficient to sustain that charge. What testimony was introduced on that subject was based on inferences by the witnesses and upon no substantial facts, and even those inferences were drawn as much from the way the voter cast his ballot in the last preceding primary election for circuit judge of that district, when no one but Republican candidates were aspiring to the office, as from his suspicioned party affiliation in state or national elections. Another fact with reference to this branch of the case did not escape our attention, which is that at the precincts where it was claimed that a large number of Democratic votes were cast for the contestee an insignificant number of Democratic votes were cast at the last state election for state officers, and at the last presidential election. Moreover, the proof further shows that some of the most prominent Democrats in the three counties composing the

district, as well as others who now reside in an adjoining county, but who formerly resided therein, were strong supporters of the contestant and busied themselves throughout the district in his interest, and some of them contributed funds used for various purposes in the election.

Neither are we able to say that either of the candidates was guilty of violating the Corrupt Practice Act. It is true that there was spent in behalf of each of them more than the maximum amount of $2,500.00 allowed by the statute, but neither of them, individually, spent that amount. The excess above that was contributed and spent by their respective friends in the district and, so far as the contestee is concerned, the proof is quite conclusive that all of it was spent for other purposes than corrupting the voters, but by that statement we do not mean to intimate that it was otherwise as to the contestant, or to give our approval to such practices though for a colorable innocent purpose. The respective litigants gave positive testimony that the excess above that allowed by the statute was both contributed and spent without their knowledge, solicitation or request and which, if true, we have held in a number of cases would not deprive the candidate of his nomination. The "Corrupt Practice Act," as has often been said by us, is a most salutary one and courts should not hesitate to deprive the party benefited by its violation of the fruits thereof. But while this is true, a candidate at whose door the evidence brings no intentional violation should not be deprived of his nomination because, forsooth, some loyal or enthusiastic friend sees proper to, and does, use money without his knowledge in bringing before the voters the efficiency of the espoused candidate for the office, and the manner in which he proposes to perform its duties, if elected. It was for such purposes only that the friends of the parties contributed the amount above that allowed by law, and, according to the construction of the statute given to it in many cases from this court, appellant should not be chargeable therewith, unless the testimony was reasonably clear that he had knowledge of it. At best the evidence in this case, so far as contestee is concerned, can be given no more force than to create a bare suspicion of knowledge on his part. It was altogether different in the case of Charles Flanary, 192 Ky. 511, and other similar cases to which we are referred, wherein it ap-

peared by substantial testimony that the accused candidate knowingly violated the statute.

The emergency of the case, and the brief time we have had to consider it, necessarily prevents an elaboration of the points involved, and we have attempted in this summary opinion but little more than a statement of our conclusion, since the conditions render it impossible to do otherwise.

Wherefore, the judgment is reversed and the secretary of state, and the county court clerks of the counties composing the district, are directed to print the name of appellant upon the official ballot as the duly nominated Republican candidate for the office of circuit judge.

Whole court sitting.