## Jones v. Steele.

(Decided September 25, 1925.)

## Appeal from Laurel Circuit Court.

1. Elections—Secrecy of Ballot Held Not Violated by Want of Election Booths to Extent Requiring Votes Cast in Precinct to be Thrown Out.—Secrecy of ballot relates to secrecy in manner of marking ballot, rather than in secrecy of person of voter, and, under Ky. Stats., sections 1467, 1468, 1550-36, where election booths in particular precinct were not constructed, but voters were allowed to mark ballots on tops of two school desks located one on either side of election officers at distance of 9 to 12 feet, secrecy of ballot was not violated to extent requiring votes to be thrown out.

2. Elections—Duty of Court in Matter of Setting Aside of Election Results Stated.—Under Ky. Stats., sections 1467, 1550-36, courts should not set aside declared result of election in particular precinct, and thereby disfranchise voters therein for mere irregularities and nonobservance of directory provisions, if there is no violation of ballot or fraud or corrupt influences practiced on or by voter.

3. Statutes—Directions in Statute, Not Required to be Followed for Accomplishment of End Intended, are Directory, and Not Mandatory.—Where statutes give directions for accomplishment of an end, which can be accomplished and merits of case unaffected, though directions are not complied with, such directions are directory, and not mandatory.

LEWIS, BEGLEY & LEWIS for appellant.

B. J. BETHURUM and REAMS & JOHNSON for appellee.

Opinion of the Court by Judge Thomas—Affirming.

The parties to this litigation, the appellant and contestant, Thank Jones, and the appellee and contestee, W. H. Steele, were each candidates for the Republican nomination for the office of jailer of Laurel county at the regular primary election held on August 1, 1925. The election officers of the various precincts of the county and the board of election commissioners for the county certified that at that election the appellee, W. H. Steele, received 707 votes and the appellant, Thank Jones, received 678 votes, thereby giving the nomination to appellee by 29 votes, followed by the issuing to him of a certificate of nomination. In due time appellant instituted this contest proceeding and in his notice of contest he set forth many grounds which he alleged invalidated a large number of votes cast and counted for appellee, and sufficient to give him a majority of the legal votes cast at the election, and he prayed that the certificate of nomination issued to appellee be cancelled and that he be adjudged the nominee for the office. Appropriate pleadings made the issues and upon trial the court opened the ballot boxes pursuant to a request for that purpose contained in the notice for the contest and recounted the votes, when it was found that instead of appellee receiving a majority of 29 he had received only a majority of 20 votes. The other grounds alleged were adjudged against the contestant and his contest proceedings were dismissed, followed by this appeal to this court

One of the grounds relied on, in addition to a request for a recount of the ballots because of mistake therein, was that in Newcomb precinct all the ballots that were cast therein were voted openly on the table and that the statutory requirement of secrecy in the ballot in primary elections was wholly disregarded so as to authorize the court to throw out that precinct as though it had no participated in the election, and that since appellee received therein about fifty more votes than did appellant the throwing it out would result in the nomination of the latter by about thirty votes; and on this appeal the latter ground is the only one urged for a reversal of the judgment, it being conceded that it correctly disposed of all the others.

The election in Newcomb precinct was conducted in a school house, the dimensions of which were practically

twenty by thirty feet. The sheriff of the county from some cause had neglected to furnish election booths at that precinct within which about 340 voters resided. Upon the opening of the poll the officers stationed themselves with the ballot boxes to one side of the building and at about the center of it and they provided a school desk between nine and ten feet from them on that side of the building and another one about twelve feet from them in the opposite direction on the same side and the voters used those desks as places for stamping their ballots. There is considerable contrariety of proof as to whether the election officers or any other person who had a right to be in the building could or did see how any voter stamped his ballot after retiring to the respective improvised places for that purpose. One witness testified that he saw how one voter stamped his ballot in the legislative race, although he was in the middle aisle of the building and nearly twenty feet from the voter. A candidate for justice of the peace in that magisterial district also testified that he saw how one voter stamped his ballot in some other race than that of jailer, and those witnesses are about, if not the only ones, who positively testified as to having seen any voter stamp his ballot for a particular candidate for any office. There is considerable contradiction in the testimony as to whether any one could have seen how any voter stamped his ballot if he had made an effort to do so without following the voter to the place where the stamping was done. Some of the witnesses claim that such an observer could have seen how the ballots were stamped, while a number of others testified to the contrary. There was also testimony introduced by contestant that the sheriff of the election, one Baker, stated after the polls closed that he had seen how a number of voters stamped their ballots, but that testimony was denied by the sheriff and its only office was to contradict him and could not be received as substantive testimony of the fact about which he is alleged to have spoken. The proof by all the witnesses was to the effect that the election was conducted in an orderly manner and that nothing was done smacking of fraud, intimidation or other corrupt or illegal conduct. The court found, under the testimony as above briefly outlined, ''That there is no such a violation of the secrecy of the ballot as will vitiate the entire vote of this (Newcomb) precinct.'' He furthermore said in his opinion: ''It is true that some several witnesses testified for the

contestant and said that the sheriff of the election could see from his station near the door how voters were marking their ballots on the desk nearest to him. There is no contention on the part of any person that the voters voting at the other place of voting in the same room could be seen by any persons, that is, as to how they were marking their ballots. It is true that the person of the voter could be seen, and his movements in manipulating his stencil and ballot could be seen by other voters or persons in the room. The secrecy of the ballot is not so essential as to the person of the voter as it is with respect to the casting of his vote, that is, who he is voting for. It is undoubtedly true that it would have been much better to have had booths and curtains in accordance with the directions of the statute on the subject, and this should be done, but to say that these three hundred and forty odd voters of this county and precinct should be deprived in their choice in the selection of the nominee for jailer because of a failure to provide them with the booth and curtain, or other means of secrecy directed by the statute, is further than this court is willing to go. . . . There is not the slightest intimation that fraud was practiced by any one; that there was any disturbance or disorder of any kind, and while the testimony is conflicting, rather strikingly conflicting on the part of Storms and Taylor, and Williams and Barnett and certain other witnesses, testifying for the contestee, and Karr and W. W. Storms, Steve Cobb and J. A. Carr, G. W. Nelson, Andy, Carr, A. D. Tuggle, Filmore Reece, W. A. Storms, A. C. Arnold, Andy Arnold, John Poynter and John Storms, on this question as to whether voters could be seen to detect how they were voting, the court is of the opinion that the situation was such as to satisfy the minds of the officers of the election and the voters who have testified here on this subject that they could cast their ballots there in that large room without being overseen by any person in the act of stamping their ballot without the use of booths or curtains. And, in view of all of the testimony in the whole case, while not approving the lack of booth and curtains at this large voting precinct, unless there was such a lack of secrecy as to invalidate the entire election in this precinct, this court would be without authority to disregard the will of these voters as expressed by them.''

It will, therefore, be seen that the court found as a fact from all the testimony in the case that, notwith-

standing there was no provided booths at the precinct, yet the fundamental requisite to the fairness of an election (the secrecy of the ballot), was preserved and that the mandatory provisions in the Constitution for *general* elections, and in the statute for *primary* elections, providing for such secrecy of the ballot would not extend to and include the secrecy of the person of the voter while he was stamping his ballot, and if the act of stamping was itself secret the election would not be invalidated and the voter, at that precinct would not be disfranchised thereby. We think the evidence was sufficient to authorize the court's finding of fact. If, however, we were less persuaded as to the correctness of his finding, we would then not feel authorized to disturb it under the well known rules of practice prevailing in this court. We shall, therefore, treat the case from the standpoint that the stamping of the ballot, at Newcomb precinct, under the circumstances indicated, was secret although the body of the voter could be seen while he was so engaged.

In the very recent case of Marilla v. Ratterman, 209 Ky. 409, it was stated by this court in its opinion, "Irregularities of election officers and voters not affecting the merits will not vitiate the election. . . . If it can reasonably be done, a court should uphold the validity of an election and not set it aside for slight and trivial causes, and where there has been fraud, intimidation, bribery, illegalities and irregularities, and the result of such sinister influences can be eiminated, and the result clearly ascertained between the legal voters, it is the duty of the court to do so and to sustain the election." A portion of section 1550-36 of the 1922 edition of Carroll's Kentucky Statutes which is devoted to the conducting of contests in *primary* elections says, "This act shall be liberally construed so as to carry out its purpose and give to the voters of the different parties an opportunity to select their candidates." That statute with reference to contests in primary elections, with the above utterances of this court in the Marilla case, measures the authority of courts in such contests and admonishes them that it is their duty to not set aside the declared result of an election and thereby disfranchise the voters who participated in it for mere irregularities and non-observances of directory provisions, provided always, that there was no violation of the secrecy of the ballot

and no fraud or corrupt influences practiced upon or by the voter.

The above rule as to the duty of courts in election contest proceedings was announced by this court in its opinions in the cases of Hardy v. Russell, 181 Ky. 287, and Muncy v. Duff, 194 Ky. 303, each of which was a contest of a *general* election and was, therefore, not affected by the above inserted statutory provision governing the contest in a *primary* election. In the Hardy case the same contention was made that Keysburg precinct, therein involved, should be thrown out because the sheriff of the election had not provided any door or curtain to the voting booths as is prescribed in section 1467 of our present statute with reference to the conducting of general elections and which is made a part of the primary election law by reference. There were booths in that case but they were not provided with doors or curtains to screen the body of the voter while he was stamping his ballot, and because of that fact it was contended by the contestant that the entire vote cast therein was illegal and should be disregarded. But this court took a different view of the matter and after reciting the facts as to the location of the booths with reference to the election officers and the latter's opportunity of seeing the voter when he was stamping the ballot because of there being no curtain or door to the booths said, "The statute gives explicit directions as to the construction of booths, and should be in all cases complied with, because the purpose of the statute is to provide means to secure the secrecy of the ballot. That the ballot shall be secret is a constitutional (in general elections) and a mandatory requirement and necessary to every valid election, but in statutes which give directions to accomplish an end, and the end can be accomplished and the merits of the case unaffected although the directions are not complied with, the directions are considered as merely directory, and not mandatory. Verney v. Justice, 86 Ky. 596, 6 S. W. 457, 9 K. L. R. 743. The weight of authority is to the effect that, 'if the election officers fail to provide booths which in their construction comply with the requirements is a mere irregularity which does not vitiate the election, always providing, however, that the essential thing of the secrecy of the ballot is preserved.' 15 Cyc. 363; 11 R. C. L. 1108. Hence in the present instance it does not seem that the mere fact that the booths were not pro-

vided with a door or curtain in front does not vitiate the entire poll.'' In the Muncy case the same guiding rule was thus stated, ''The arrangements for holding the election at Howard precinct were improvised and crude, because the sheriff had not performed his duty in furnishing the equipment for the election, as provided by statute; yet, appellant does not contend that they were not sufficient to secure the secrecy of the ballot, but that the failure to hold an election by secret ballot arose from intimidation of the voters, on the part of Belcher. The constitutional provision requiring a secret official ballot is mandatory and nothing short of a substantial compliance is a valid election, but mere irregularities of the officers in the conduct of the election or in the arrangement for its holding, where they do not comply with the law as to rooms and booths, the failures are irregularities and do not vitiate the election providing the essential thing of the secrecy of the ballot is preserved. The essential ends to be accomplished by an election are that the ballot shall be secret and that the election shall be conducted fairly, so that the result of it will be a fair expression of the wish of the electorate; and statutes which give directions to accomplish the ends, and the ends are accomplished, and the merits of the case unaffected, although the directions are not complied with, they are to be considered directory and not mandatory.'' See also the cases of Thurman v. Alvey, 192 Ky. 341, and Swaner v. Barnett, *idem,* 345, upon the question as to liberality of construction of the statute in primary election contests.

But it is insisted by counsel for appellant (contestant), that in the case of Manning v. Lewis, 200 Ky. 732, we upheld the trial court's action in throwing out Armville precinct in Jackson county under testimony similar to that introduced in this case and where there were no provided booths and the voters stamped their ballots upon the tops of the school desks. The writer also wrote that opinion and it is his recollection, without examining that record, that the testimony in that case clearly established that the secrecy of the ballot was wholly disregarded. But, however that may be, a reading of that opinion will show that the question here presented was not discussed therein; partly because of the urgency of the case, as is also disclosed in the opinion, but mainly because the acceptance by us of the throwing out of that

precinct by the trial court did not alter the result. The questions here presented and which we have above discussed were not attempted to be disposed of by that opinion, and in no event can it be regarded as an authority for appellant's contention.

It will be observed that this court held in the Hardy and Muncy cases, *supra,* that the statutory provisions with reference to the providing of paraphernalia for conducting elections were and are directory, and so long as their nonobservance did not result in destroying the secrecy of the ballot the election should be upheld, and, the right of the voter to participate in the selection of nominees for office, or the election of persons to office, should not be lost sight of and should not be taken away from him upon the mere nonobservance of directory provisions by officers whose duty it is to execute them. If, however, such nonobservance was followed by open voting or other fraudulent and corrupt practices so as to destroy the secrecy of the ballot, and also the fairness of the election, a different result would follow, since in that case the vote should be altogether rejected. No such consequences followed the absence of booths in this case, and we feel constrained to hold that, since no vitiating fact is proven, the vote cast at Newcomb precinct should be counted, notwithstanding the sheriff failed to provide booths in which the voter might stamp his ballot.

The section following the one providing for booths (1468) imposes the duty upon the sheriff to furnish ballot boxes for the election and prescribes how they shall be constructed; if he should fail to do so and the boxes should be obtained by the election officers, though differently constructed but so that the ballots could be deposited in them and their secrecy preserved, then surely no one would contend that the election was thereby illegal. Evidently the purpose of booths was to furnish the voter a place for the stamping of his ballot in secrecy and was not intended to hide him while he was engaged at it, and, since the court found that such secrecy prevailed at Newcomb precinct, we feel as he did, that to throw out the entire precinct "is further than this court is willing to go." The illustration with reference to the furnishing of ballot boxes is pertinent, since they are provided *receptacles* within which to deposit the ballots after they have been stamped in such a manner as to preserve their secrecy; while the provision with refer-

ence to booths has for its purpose the providing for a secret *place* where the ballot might be secretly stamped. If, therefore, secrecy is observed in each instance, the fundamental purpose of the law is complied with.

Wherefore, the judgment is affirmed.