## Eversole v. Craft.

(Decided November 12, 1926.)

### Appeal from Perry Circuit Court.

1. Elections—Petition Nominating Independent Candidate Held Not Insufficient; Objections being Hypercritical.—Petition to have contestee's name placed on ballot as independent candidate held not insufficient because word "request" was used instead of "petition," qualifications of candidate were not set out in detail, and post office address of each elector was indicated by word "same" following name of city of residence.

2. Elections—Vote of Precinct will Not Be Thrown Out Because Clerk Procured Necessary Assistance of Other Election Officers in Writing Ballots to which they Signed His Name in His Presence.— Where nearly all of 600 voters were to vote three ballots, and only one clerk was designated, the vote of that precinct will not be thrown out because clerk procured assistance of other election officers in writing ballots, who in his presence signed his name on back of ballots, where evidence shows impossibility of one clerk doing work during hours of election, and that no advantage or disadvantage resulted to any candidate.

3. Elections—Vote of Precinct Will Not be Thrown Out for Merely Technical Disregard of Requirements as to Crowds Around Polling Place and Arrangements of Booths.—Where election was en-

tirely fair and by secret ballot, vote of precinct will not be thrown out because requirements of statute as to crowds around polling place and arrangement of voting booths, because of nature and location of building, were not strictly complied with; statute being directory, not mandatory.

EVERSOLE & TURNER and H. C. EVERSOLE for appellant.

T. E. MOORE, JR., and FAULKNER & FAULKNER for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

At the November election, 1925, appellant and appellee were candidates for the office of mayor of the city of Hazard. Appellant was the Republican nominee and appellee was an Independent candidate by petition.

At the election, according to the returns certified by the election officers in the six precincts of that city, appellant received 817 votes and appellee 925 votes.

Upon a trial of this election contest instituted by appellant the lower court dismissed his petition and adjudged appellee to have been the lawfully elected mayor.

Many grounds of contest are asserted, but upon this appeal only two grounds are relied upon for reversal: (1) That appellee's name was wrongfully printed upon the official ballot, (a) because the petition filed with the clerk to put his name upon the ballot was not a petition but only a request of the clerk so to do, (b) because the petition does not show the elegibility of appellee to hold the office, and (c) because the petition does not show the post office address of each or any of the petitioners; and (2) because the court declined to throw out or disregard precinct No. 36, there having been at that precinct, as alleged, no election by secret ballot as provided by law.

If the returns from precinct No. 36 should be disregarded, or if appellee's name was wrongfully printed upon the ballot, in either event appellant would be entitled to be declared lawfully elected.

It is true that the petition signed by the requisite number of voters uses the word "request" as distinguished from the word "petition" which is required to be and was in this case directed to the county court clerk. The paper so presented to the county clerk upon its face unmistakably discloses the purpose of the electors whose names are thereto signed to have the name of appellee

printed upon the ballot as an Independent candidate for mayor, and it is hypertechnical in the extreme to say because it only *requests* him to do it, that it is not a petition to him so to do.

The paper so filed recites in terms that the appellee is lawfully qualified to hold the office of mayor, but the contention is made that it is insufficient because it fails to show in terms his age or that he has been a citizen of the town a sufficient length of time. Obviously these objections, if well taken, would themselves be grounds of contest; but it is not essential that the petition to the clerk to place his name upon the ballot should go into details in stating the facts showing his eligibility.

But it is said the petition was insufficient because it did not state the post office address of any of the signers, and that contention is based upon the fact that each of the petitioners signed the petition upon or near the left margin in the line at the top of which is "name;" then in. the center at the head of the page is the word "residence," and under that opposite the name of each signer are the words "Hazard, Ky.;" then near the margin on the right of the sheet at the top of the page are the words "P. O. address," and opposite the words "Hazard, Ky.," under the designation of "P. O. address," and in the line opposite each signature, is the word "same."

It would be a waste of words and energy to enter into an argument to show that this paper discloses to any intelligent person, not only that the residence of each signer is Hazard, Ky., but it shows also that city to be his post office address.

Obviously these contentions as to the insufficiency of the petition are without merit.

Precinct No. 36 embraces a considerable portion of the city of Hazard, as well as a small area outside of the city. At the election in November, 1925, there were three separate ballots to be voted, the county ballot, the city ballot and a school ballot. All the residents of that precinct, including those outside of the city, had a right to vote the county ballot, while only those registered in that precinct and living within the city were entitled to vote the city and school ballots. There were more than 600 persons entitled to vote in that precinct, nearly all of them entitled to vote all three ballots. There was only one designated clerk of the election in that precinct, and

it being impossible for him to write all the ballots in all three of the elections, he only undertook in person to write the county ballots, and by agreement another election officer wrote and prepared the city ballots, and still another the school ballots, and each of the latter two in the presence of the designated clerk signed the name of that clerk upon the back of the city and school ballots. The evidence shows convincingly that it would have been practically impossible for one clerk to have prepared during the hours of the election all of these ballots, and that if the arrangement set forth had not been entered into a large number of the electors in that precinct would have that day been practically disfranchised. There is no claim or even intimation that this arrangement so carried out by agreement between the election officers operated to the advantage or disadvantage of either of the candidates for mayor, or that there was anything connected with the preparation of the ballots suggestive of fraud or interference.

In that precinct the election was held in a storeroom 30 feet long by 20 feet wide; the entrance was on the left of the building, and to the right after entering, a light framework was erected along a counter for five voting booths; there was placed in front of each of these booths a curtain some two or three feet long, and between each of the booths another curtain was tacked at the top and the bottom. To the right of the door on the outside were large windows, and through these windows persons on the street could see into the storeroom, but there is no evidence that they could have seen into any of the booths. The preponderance of the evidence is that when the voters went into these booths by lifting the outside curtain, that when they dropped it their movements therein were concealed, and no one could see how they marked their ballots. One witness testifies that he could have seen how a certain man and woman voted if he had tried, but does not profess to have done so, while the great preponderance of the evidence, including that of each of the election officers, is to the effect that the election was in all essential respects secret, and that the voters were concealed when they were in the booths, except that the outside curtain did not hide the lower part of the body.

A careful reading of the evidence convinces us that in rather an unusual degree the election was one by secret ballot.

But it is said that great crowds gathered around the outside door of this building, and that there was no rope or barrier which required them to stay the statutory distance from the polls.

The facts disclosed in the evidence are that the store room is very near to a bridge in constant use by the public, and that it fronts upon a very narrow street, so that if a rope had been stretched in front of that building so as to keep the crowd back it would have obstructed travel both on the bridge and on the street. The evidence does show that at times during the election there were crowds at the door of the building within fifty feet of the booths, but it also shows that at no time were there more voters permitted inside the building than were necessary to a speedy and orderly election.

Our statutes designed to carry into effect the constitutional requirement for the secrecy of elections, in so far as they prescribe the means and methods of carrying that constitutional provision into effect, are only directory, although the end designed to be accomplished is itself mandatory. So even if certain statutory requirements as to the conduct of an election are not complied with, when the essential thing of secrecy of the ballot is effectually brought about, such statutory requirements are always held to be only directory and not mandatory. Munsey v. Duff, 194 Ky. 303; Hardy v. Russell, 181 Ky. 299; Varney v. Justice, 86 Ky. 596.

The election in precinct No. 36 is shown to have been fair, to have been held by secret ballot, and to have properly registered the will of the voters. To disregard the result in that precinct whereby appellant would be elected mayor of Hazard would be to disregard the substance and give effect to mere form, and thereby defeat the will of the majority.

Judgment affirmed.