## Smith v. Jones.

(Decided October 25, 1927.)

### Appeal from Whitley Circuit Court.

1. Elections.—In election contest ballots not marked with stencil in ordinary way, but showing impression on ballot by one corner of stencil, held to have been properly counted.
2. Elections.—In election contest, ballots on which stencil mark was not made in square opposite candidates' names, so that court was unable to determine for whom voter intended to vote, held improperly counted.
3. Elections.—Election in precinct conducted without partition between voting places, so that each voter could see how others voted, was not secret ballot election, required by Constitution, sec. 147, and vote of precinct should be thrown out.
4. Elections.—Under Ky. Stats., sec. 1475, no voter can have clerk mark his ballot for him on table unless he makes oath that he is blind or so physically disabled as to be unable to mark his ballot, and in other cases, where voter is illiterate, clerk should mark ballot indicating voter's choice, and deliver it to voter, who must retire to booth and there mark his own ballot.
5. Elections.—Under Ky. Stats., sec. 1475, providing that blind persons may have ballot marked by clerk, person so devoid of sight that he cannot see pencil mark made by clerk is "blind" within meaning of statute, but voter must swear to such fact.
6. Elections.—Under Ky. Stats., sec. 1475, authorizing clerk to mark ballot for blind person, voter is not "blind" if he has left his spectacles at home.

E. G. UNDERWOOD and WILLIAM LEWIS & SON for appellant.

TYE, SILER, GILLIS & SILER for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Affirming.

W. T. Smith and Wolford Jones were opposing candidates for the Republican nomination for circuit clerk of Whitley county at the primary last August. On the face of the returns, Jones received a majority of 11 votes. Smith contested. Jones filed a counter contest. On a recount of the ballots by the circuit court, Smith received a majority of 60 votes over Jones; but the court found that 61 votes for Jones were cast openly on the table, and that 123 votes were cast openly on the table for Smith. These votes the court deducted, leaving Jones a majority of 2. Smith appeals.

There were 9 contested ballots, and Smith maintains that 6 of these ballots should not have been counted. Five were counted for Jones and one for him. These ballots were not marked with the stencil in the ordinary way. The impression on the ballot appears to have been made by one corner of the stencil. This will happen when the stencil is not held perpendicularly. On a careful consideration of these ballots, the court reaches the conclusion that they were properly counted by the circuit court.

Jones insists that one contested ballot, which was counted for Smith, should not have been counted. The stencil mark on this ballot is not made in the square opposite either of their names, and is made in the space between these squares, and so nearly in the center of this space that the court is unable to determine for whom the voter intended to vote. This ballot was therefore improperly counted for Smith by the circuit court.

There were 14 ballots returned as questioned by the election officers, 7 of these for Jones and 7 for Smith, and neither party complains as to these ballots.

Smith insists that the court erred in holding illegal 14 of the 123 votes, which the court held were cast openly on the table for him. The court has carefully considered the evidence as to these 14 votes, and finds no error in the ruling of the court, except as to one vote, and this simply offsets the vote above taken from Smith.

Smith in his original notice of contest set out that certain persons had voted for Jones openly on the table in certain precincts, and that others had so voted whose names were unknown to him. On August 31, he filed an amended petition and notice of contest in which he gave the names of 37 other persons who had voted openly on the table for Jones, and asked that these be excluded from the count. On September 1, Jones filed an amended answer and counterclaim, in which he gave the names of about 40 additional persons who had voted on the table openly for Smith, and he asked that these be excluded from the count as an offset. Each party objected to the pleading of the other being filed, but the court does not find it necessary to determine this question, as Jones has on other grounds a majority, though these 37 votes are counted for Smith.

Among the grounds of counter contest filed by Jones was this: That the election in South America precinct,

No. 13, was not conducted by secret ballot, and that the vote of the precinct should be thrown out. In this precinct there were 146 votes cast, 99 for Smith and 47 for Jones—a majority of 52 for Smith. The proof shows that at least 35 of the 146 votes were cast openly on the table, without being sworn. This is more than 20 per cent. of the total vote in the precinct, and it has often been held that, where as much as 20 per cent. of the total vote has been illegally cast, and it is impossible to determine the result of the legal vote between the contending candidates, the precinct should be thrown out. Harrison v. Stroud, 129 Ky. 193, 110 S. W. 828, 33 Ky. Law Rep. 653, 16 Ann. Cas. 1050; Manning v. Lewis, 200 Ky. 732, 255 S. W. 513; Marilla v. Ratterman, 209 Ky. 419, 273 S. W. 69. In addition to this it appears that the election was held in a room 12x15 feet; that the officers of the election occupied a table in one end of the room and three boxes were placed side by side along the 12-foot end of the building. There were no curtains of any kind; the voters would stamp their ballots on these boxes, and were necessarily standing practically shoulder to shoulder, so that each could see what the other did, and anybody in the room could also see, as there was no screen or obstruction of any sort. To sustain such an election would be to give no force to the constitutional provision that all elections by the people shall be by secret official ballot. Section 147. When a man votes openly on the table, it may be easily so arranged that the purchaser of a vote may know how the voter voted, and the voter may only receive his pay after the purchaser knows that the voter voted right. A purchasable voter often votes on the table for this reason. The constitutional provision and the statute were intended to prevent this. The court is clearly of the opinion that only the form of a secret ballot election was held in this precinct, and that the precinct should be thrown out. In Jones v. Steele, 210 Ky. 205, 275 S. W. 790, the room was 20x30 feet. Desks were placed on opposite sides of the building for the use of the voters. The only thing missing was a curtain, and there was evidence that the voting was secret. The situation there was consistent with a secret ballot. Section 1475, Kentucky Statutes, provides as follows:

"Any elector who declares, on oath that, by reason of inability to read the English language, he is

unable to mark his ballot, may declare his choice of candidates or party ticket to the clerk, who, in the presence of the judges, sheriff and challengers and the elector, shall, with his pencil mark a dot in the appropriate place for the cross-mark, to indicate the choice of the elector. The clerk shall then fold and deliver the ballot to the elector, and instruct him to retire to the booth and there mark his ballot by making a cross-mark either in the squares showing dots or any other squares he may desire. In all other respects he shall vote as is required of other electors. In case any person applying to vote is blind, and shall so declare on oath, the clerk shall be allowed to mark his ballot for him in the presence of the other officers of election, and the challengers allowed by law; or in case any person shall be so physically disabled as to be unable to mark his ballot, and shall so declare, on oath, the clerk shall have the right to mark his ballot as in the case of a blind person applying to vote.''

This statute seems to have been entirely misapplied by the officers in Whitley county in this election. Under it no voter has a right to have the clerk mark his ballot for him on the table, unless he makes oath that he is blind or so physically disabled as to be unable to mark his ballot. In all other cases where the voter is illiterate, the clerk, in the presence of the other officers, shall, with a pencil, mark a dot in the appropriate place to indicate the choice of the voter. The clerk shall then fold the ballot and deliver it to the voter, and the voter must retire to the booth and there mark his ballot with the stencil as he may desire. If a person is so devoid of sight that he cannot see the pencil mark made by the clerk, then he is blind within the meaning of this section. But, before the clerk is authorized to mark his ballot, the voter must swear that this is the fact. The voter is not blind within the meaning of this section if he has left his spectacles at home. He should either get his spectacles or borrow a pair for the occasion.

As this precinct gave a majority of 52 for Smith, and his amended petition only assails 37 votes, it is clear that the deduction of these 37 votes would have no effect upon the result of the election, as with this precinct counted Jones had a majority of 2 votes.

In the Corbin precinct No. 40, there was gross fraud and illegal practices. Jones by his counter contest also sought to have this precinct thrown out, but, as Jones has a majority outside of this precinct, it is unnecessary for the court to decide whether the precinct should be thrown out.

Smith insists that 8 votes cast for Jones should have been excluded in addition to the 61 votes excluded by the circuit court, because voted openly. But it is unnecessary to pass on these votes, as their exclusion would not affect the result, for, if we add 52 to 2 we have 54, and, if we then deduct 37 plus 8, or 45, Jones has a majority of 9.

On the whole case, the court is satisfied that Jones received a majority of the legal votes cast at the election, and was properly awarded the certificate by the circuit court.

Judgment affirmed.