## Campbell v. Little et al.

(Decided Dec. 15, 1933.)

C. C. TURNER and ERVINE TURNER for appellant.
GRANNIS BACH and A. H. PATTON for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

At the November election, 1933, George W. Little was the republican candidate and Pearl Campbell, the democratic candidate for the office of county judge

of Breathitt county. The election commissioners tabulated and counted for Little 3,523 votes and for Campbell 3,582 and were preparing to issue a certificate of election to Campbell. Before the election certificate was issued, Little filed this action for a review and recount of the ballots in Spring Fork precinct No. 12, charging that 156 of them were not signed by either of the judges of the election, but notwithstanding the absence of the signatures of the judges, the election commissioners had counted them and were preparing to certify the election of Campbell, when in truth, if the 156 ballots were excluded and not counted for either him or Campbell, he was elected to the office of county judge by the majority of the voters of the county and entitled to a certificate of election. Campbell filed an answer and counterclaim traversing, and further alleged, that in Elkatawa precinct No. 3, 184 ballots had been voted and of this number, 162 cast for Little and 22 for Campbell. Of the 162 counted for Little, there appeared on 60 or more of them, external, distinguishing marks of disfigurement or mutilation, which indicated to another how the voter who had voted each ballot had voted at the election, and that the ballots so marked should not be counted for Little. His answer and counterclaim were traversed by a reply.

The ballot boxes in the two precincts were produced in open court, opened, and the ballots found in each of them were examined by the court in the presence of the parties and counsel.

The ballox boxes of Spring Fork precinct No. 12, when opened in court, contained 380 ballots, on the back of 223 of which, neither of the judges of the election had signed his name; of the 227 there were cast for Campbell 149; 32 of the 227 were not voted in this race; 55 of those voted for Campbell were signed by the clerk and one of the judges and 8 were not signed by the clerk or either of the judges. The trial court declined to permit to be counted the ballots not signed by either of the judges in Spring Fork precinct No. 12. Lee Allen, one of the judges of the election, was present in court and offered to sign the ballots if permitted to do so by the court. Campbell entered his motion for an order permitting Allen to sign them; the court overruled his motion and refused the judge of the election the privilege of signing them.

The ballot boxes of Elkatawa precinct No. 3, when opened in court, contined 195 ballots. One of them had the stub still attached; another was not signed by either of the judges; on 102 of them the distinguishing mark of which Campbell complains was found; 91 were free of such marks. Of those with the distinguishing mark on them, 85 were cast for Little and 12 for Campbell; 5 of the ballots were not voted in this race; of those on which there were no distinguishing mark, 77 were voted for Little and 9 for Campbell; 5 of those bearing the mark were not voted in the race.

It is not claimed by either party that the ballot boxes or the ballots therein were tampered with at any time before they were opened in court. Their integrity is not disputed. Section 1460 Baldwin's 1933 Supplement, Ky. Statutes, requires a blank line to be printed on the back of every ballot, followed by the word "judge," and that after the ballot has been detached from the stub book, on the back of the ballot, and before it is delivered to the voter to be voted, one of the judges shall sign his name on such blank line and no ballot not so signed by one of the judges shall be counted by the canvassing board, whose duty it is to certify the results of the election. This statutory provision is mandatory and final.

The actuating purpose of this section was to make it assured that, from the moment the ballot leaves the hands of the elector until it shall be received by the election commissioners, it cannot be substituted or otherwise tampered with. It is presumed that the voter, after he receives the ballot for the purpose of stenciling it to indicate his choice of the candidates, will inspect it and observe that it is authenticated by the signature of one of the judges, and, if not, demand that it be so identified. In every case where the judges of the election fail to authenticate the ballot with one of their signatures as required by the statute and the voter fails to observe his dereliction, in this respect, the absence of the signature of one of the judges is regarded by the statute, the result of combined negligence of the judges of the election and the voter who casts his ballot. And therefore, if on account of the ballot not being so authenticated, it is not counted, it is partially the sequence of the voter's own negligence. Johnson v. Caddell et al., 250 Ky. 640, 63 S. W. (2d)

810. Section 1569, Ky. Statutes, in part reads:

"No voter shall place any mark upon his ballot, or suffer or permit any other person to do so, by which it may be afterward indentified as the one voted by him."

The same section provides a penalty for its violation. Section 1570, Ky. Statutes, provides:

"If any person shall induce, or attempt to induce, any elector to write, paste, or otherwise place on his ballot the name of any person or any sign or device of any kind, as a distinguishing mark by which to indicate to any other person how such elector has voted, such person so offending shall be guilty of felony, and, on conviction, be imprisoned in the penitentiary not less than two nor more than five years. Any ballot having any of the distinguishing marks mentioned in this section shall not be counted for any candidate voted for at that election."

Section 1472, Ky. Statutes Supp. 1933, directs the voter on receiving his ballot to examine the same carefully, and, after he marks it with a stencil, and detaches the secondary stub, he shall deposit it in the ballot box, and it is "unlawful for any election officer, after such ballot has been delivered to such voter, to look or attempt to look at, or have in his possession, or handle any ballot contrary to law or in any manner whatsoever, except that such voter be a blind or disabled person and cannot mark and deposit his ballot."

These statutory provisions were enacted to carry out section 147 of the Constitution which requires all elections by the people shall be by secret ballot, with the permission to the Legislature to provide for the voting of persons illiterate, blind, or in any way disabled, preventing their marking their ballots. We have often reiterated the statement that an election by secret ballot is indispensable under this section of the Constitution. Nall v. Tinsley, 107 Ky. 441, 54 S. W. 187, 21 Ky. Law Rep. 1167; Banks v. Sergent, 104 Ky. 843, 48 S. W. 149, 20 Ky. Law Rep. 1024; Major v. Barker, 99 Ky. 305, 35 S. W. 543, 18 Ky. Law Rep. 104. It is Campbell's contention that the ballots in Elkatawa precinct No. 3, bearing a certain mark thereon, are within the inhibition of the Constitution requiring elections by secret ballots. Also, they are within the pro-

visions of sections 1569 and 1570 of the Statutes. The requirements of the latter forbid the counting of the ballots when the voter makes "any sign or device of any kind" or suffers or permits another to place on his ballot "a distinguishing mark by which to indicate to any other person how such elector has voted," or "by which it may be afterward identified as the one voted by him." (Section 1569.)

Whether the mark or sign on the ballot was intended by the voter for a purpose within the inhibition of the statute, is immaterial, if it is reasonably calculated to serve such purpose, the same invalidates the ballot and requires that it be not counted for the candidate for whom it was cast.

Respecting Elkatawa precinct No. 3 the facts are these: Granville Little, F. M. Miller, Tom Gabbard, and Miss Orlena Collins were officers of the election; Little was clerk. The impression or mark on the ballots of which Campbell complains is explained by the election officers this way: During the day the officers were crowded by the voters who desired to vote. There were two post offices within the boundary of Elkatawa precinct No. 3, one of which was Elkatawa and the other Woolverine. The election officers undertook to write on the blank line on the stub the post office addresses of the voters, the doing of which by the clerk caused delay in the voting. The post office at Elkatawa was near the room in which the voting was being conducted. Some one obtained the stencil used at the post office for stenciling mail, which contained the name "Elkatawa." In using this stencil the clerk of the election, when stamping or attempting to stamp the name "Elkatwa" on the vacant line of the stub, the stencil extended over the perforated line so that the impression of the stencil made a portion of a semicircle on the top of each ballot on which it was used. Of course, when the stub was detached, the impression made by the stencil remained on the ballot. The use of the stencil by the clerk for this purpose was agreed to by the election officers and his use of it during the day was well known to them. This statement of the facts discloses that the mark on the ballots, of which Campbell complains, was made without the knowledge or consent of the voter and not to induce or attempt to induce the voter to make a sign or device of any kind as

a distinguishing mark to indicate to any other person how such voter had voted. The intendment and purpose of the sections of the statute, denouncing the use or making of any "sign or device of any kind" as a distinguishing mark by which to indicate to another how such voter voted, are to prevent fraudulent voting as well as an evasion of section 147 of the Constitution requiring elections by secret ballots. It is not shown nor attempted to be shown that the voters had any knowledge of the existence of the stencil impression on the top of the ballots or that they directly or indirectly assented to or approved its presence. It is plain that the presence of the mark or impression of the stencil on the top of the ballots is not an evasion of the provision of section 147; it is also plain that to refuse to count the ballots, because of the act of the clerk, with the approval of the other election officers, so to use the post office stencil, thereby making on the top of the ballots the impression complained of, would be a disfranchisement of the electors who cast those ballots. We are not convinced that the facts authorize their disfranchisement.

The agreement of the election officers to use the post office stencil cannot be permitted to invalidate valid ballots properly stenciled and voted by legally qualified voters, simply because the stamping of the stubs attached to the ballots with the post office stencil caused the impression thereon to overlap onto the top of the ballots. Under the circumstances, such act of the clerk of the election was an irregularity, of such a character as often results from an indiscreet effort of election officers to accommodate legal voters. Such irregularities are not sufficient to authorize the ballots so marked to be thrown out and not counted. Anderson v. Winfree, 85 Ky. 597, 4 S. W. 351, 11 S. W. 307, 9 Ky. Law Rep. 181; Bailey v. Hurst, 113 Ky. 699, 68 S. W. 867, 24 Ky. Law Rep. 504; Napier v. Cornett, 68 S. W. 1076, 24 Ky. Law Rep. 576. It is an established rule that irregularities of election officers, or even of the voters themselves, not violative of a mandatory statute, not affecting merits of an election, will not invalidate the ballots of qualified voters, properly stamped by them and deposited in the ballot boxes as directed by the statute. Marilla v. Ratterman, 209 Ky. 409, 273 S. W. 69; Eversole v. Craft, 216 Ky. 500, 287 S. W. 965; Jones

v. Steele, 210 Ky. 205, 275 S. W. 790. In Marilla v. Ratterman, it was stated by this court:

"Irregularities of election officers and voters, not affecting merits, will not vitiate election. * * * If it can reasonably be done, a court should uphold the validity of an election, and not set it aside for light and trivial causes, and where there has been fraud, intimidations, bribery, illegalities, and irregularities, and the results of such sinister influences can be eliminated, and the result clearly ascertained between the legal voters, it is the duty of the court to do so, and to sustain the election."

This rule was quoted with approval in Jones v. Steele, supra.

In Kash v. Hurst, 189 Ky. 233, 224 S. W. 757, 761, the name of the candidate voted for was printed on the ballot. In the space immediately below it, the voter wrote with a pencil the name of the candidate; thus clearly making possible a means by which his ballot could be distinguished, the very thing intended to be prevented. Section 1569.

We held that the ballot with the name of the candidate so written by the voter thereon was within the purview of section 1569. In discussing it, we said:

"While the individual voter who cast this ballot may have had no such intention, it is a clear violation of the statute, and the ballot cannot be counted. To treat a ballot so marked as valid would be an invitation to designing persons to perpetrate divers frauds; identity of the voter being possible through the handwriting, or perhaps by other schemes that might be devised. * * * Where the candidate's name is printed on the ballot, there can be no occasion for a person writing the same name, either in the blank space or in the space wherein the name is printed, because by so doing the voter so marks and distinguishes his ballot as to vitiate it under the section of the statute referred to."

The mark or stencil impression complained of in the pending case, having been made by the clerk of the election in the course of his preparation of the ballot, before its delivery to the voter without the knowledge or consent of the voter, does not bring this case within

the interpretation of the statutes in Kash v. Hurst. It is argued with plausibility that, if in the Spring Fork precinct No. 12 the disregard by the judges of the election of their statutory duty is permitted to invalidate the ballots in that precinct, a fortiori, the act of the clerk in Elkatawa precinct No. 3 should invalidate the ballots bearing the mark or impression of the post office stencil in the Elkatawa precinct No. 3. The ballots in Spring Fork precinct No. 12 are invalidated by a mandatory statute which the courts are without authority to modify even to protect voters from its harshness. When a mandatory statute is invoked, the courts have no discretion in its administration, except to enforce it as it is written. The Legislature may alter, amend, modify, or change it, but the courts cannot do so, under the guise of interpretation. When administering sections 1569 and 1570, we may interpret and apply them according to the facts in the particular case, in the light of the general, applicable principles, as we have reiterated them.

The trial court correctly excluded the ballots in Spring Fork precinct No. 12, which had not been signed by either of the judges, and properly declined to exclude those in Elkatawa precinct No. 3 on the top of which appeared the mark of the post office stencil. The doing so entitled Little to the certificate of election, in which we concur. Wherefore the judgment is affirmed.