## Holley v. Burke.

Oct. 12, 1945.

572

V. R. Bentley and J. Erwin Sanders for appellant.

J. E. Childers and Sidney Trivette for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

In the August primary parties were candidates for nomination to the office of Chief of Police of Pikeville. The certified results showed that Holley had received 257 votes and Burke 268. Holley filed petition contesting and asking for a recount, which the court ordered, resulting in a gain of one vote for Burke. There is no complaint as to the recount, the only question is whether or not in

the contest proceeding the court rightly adjudged Burke the nominee.

Appellant as grounds for contest alleged that in precinct No. 51 ballots were cast openly, and as so cast were placed in the boxes, counted and certified by the commissioners. On this ground he asks that ballots cast in this precinct (70 for Burke and 45 for Holley) be thrown out. It was charged that Burke had received in this and precinct 56, the votes of 26 persons (13 in each) who had been bribed, coerced or intimidated by workers and policemen, and that these along with others unnamed should be deducted from Burke's vote.

In an amended petition filed twenty-three days after the primary, appellant by the first paragraph elaborated by more definitely showing his qualifications, his compliance with statutory requirements, and the allegation omitted from the original, that he had not violated the Corrupt Practices Act, KRS 123.010 et seq., and the essential allegation that the illegal acts charged were done with the knowledge and consent of appellee. The remaining paragraphs amplified the original, adding the charge that by reason of the matters alleged it would be impossible to determine who was nominated, and asked the court to declare no election.

Appellee before answer (a specific denial) filed general and special demurrers, and motion to strike all allegations of the petition charging open voting, coercing and bribing voters; this if sustained would have left only the request for recount. The record does not show that demurrers or motion were passed on by the court, or that appellee pressed these pleas, hence they are to be treated as waived. However, upon examination of the petition we are of the opinion that it stated a cause of contest, though deficient in seeking relief for violation of the Corrupt Practices Act. The court overruled motion to strike paragraph 1, but struck the remaining four paragraphs. His ruling in this respect was correct. KRS sec. 122.020 provides that no ground of contest by either party shall be filed or made more definite by amendment after the expiration of the time for filing the original pleading. The amendment was filed several days too late. This statute is mandatory, Brock v. Williams, 260 Ky. 569, 86 S. W. 2d 324.

Proof as to the 26 alleged illegal votes fails as to all save some four or five. Prater, who worked for Burke and Trivette in precinct 51, paid four voters sums ranging from two to six dollars, some before and some after voting. One witness, whose name appeared on the ballot stub, testified that he had not voted. Prater, introduced as a witness for appellant, admitted giving the four named voters money, but denied that it was given to influence their voting. It is not difficult to conclude that these voters were paid for their votes, but if stricken Burke would still have a majority, and we may say that since appellant introduced Prater, Roberts and Scott, who seemed to be handling small sums of money, and all testified that none of the money was furnished by Burke, and he knew nothing of its use for an illegal purpose, or that it was used with his knowledge or consent, appellant failed on this point to establish a violation of the Corrupt Practices Act, even had he properly alleged such in his petition.

Roberts and Prater were working for Burke and Trivette in precinct 51 as both, introduced by appellant, admit. One witness testified that he was around the courthouse on one or two nights before the election, where Burke, Scott and Roberts were present and saw some money on a table. Scott admits that he gave Prater $30 and John Vanover (apparently working in precinct 80) $30, but it was given to them to use in getting out the vote. Prater brought back to Scott $11. Scott said he had instructed Roberts and Prater to use the money in the hiring of automobiles. He testified that the money he gave out, including the sums given to the four voters, was his own and that Burke "had not a thing to do with it." Scott also gave Vanover $30 to use in getting the voters out in precinct 80. He gave Bill Burke $20 for the purpose of hiring a car; this left him $5 and he "eat some out of it and had $2.00 left."

Prater admits that he was active on behalf of Burke and Trivette in contacting voters and handing out cards and sample ballots. He was asked to mark one sample ballot, but it had already been marked for Burke, and he marked it for Trivette. He admits that he saw Burke and Scott on the night before the election and that Scott gave him some money, but that it was not given him for his vote or work, since he had been for Burke and Trivette "all the time" before the election.

Roberts said he contacted voters and gave them cards; that some time before the election Scott had given him $20, but he still had it; he had spent no part of it. He did not mark any ballots, and only saw one ballot that was marked. He saw Prater on the grounds, but they had no particular talk about any candidate. On cross-examination he said that Scott had given him the money to see that the voters were brought out, and he had done "considerable work three or four days before the primary," and he had not seen Scott since the election. On this point, that is the alleged use of money and activities charged to Scott and Prater and those to whom they gave money, we fail to find enough proof to have justified the trial judge in eliminating precinct 51 or in deducting any votes, save perhaps those specifically mentioned above.

It was alleged that 26 voters had been bribed, coerced or intimidated to vote for appellee in precincts 51 and 56. The charges of coercion or intimidation were not borne out by proof. It was shown that in each precinct there was one, and in another two policemen dressed in uniform and armed as policemen usually are. The most that is shown is that they were contacting voters, and in some instances handing out marked sample ballots. There is no proof of any untoward act on the part of the officers; no proof of coercion, intimidation or vote buying. One of appellant's witnesses on this point says that their conduct was not objectionable. In one precinct it was shown that a stub carried the name of one voter who testified that he did not vote. In none of the instances of illegal voting was it shown for whom the votes were cast. Drennan v. Roberts, 234 Ky. 574, 28 S. W. 2d 735.

The point stressed by appellant relates to the alleged open voting in precinct 51, held on a porch of an old school building, about 50 feet long and 6 or 8 feet wide. The officers sat at a table in the middle, next to the wall. The voting was done on tables at each end of the porch some 15 or more feet from the officer's table. The porch level was 2½ or 3 feet above the ground, where the voters stood before going on the porch to vote. Appellant, by far the strongest witness in his behalf, said that the voting was in plain view. In several instances Roberts would mark a ballot, then get in position to see how the voter cast his vote, and give a signal to Prater,

who was out on the ground. They deny that any such thing happened. Holley said the "public" was within 15 feet of the table on which the voting was done, and the marking could be seen by those who were in line to vote if they were interested in seeing. He said that he couldn't say whether the election officers undertook to keep people back from the table or not.

On cross-examination he said he did not think the election officers undertook to see how any voter had marked his ballot. The voters stood up when they marked ballots. He admitted that notwithstanding the situation described, he only saw how one voter marked his ballot in Burke's and Trivette's races. Appellant was at this precinct and noticed the voting "throughout the day." He saw no one watching the voting except Roberts and Prater, and saw them marking sample ballots, but he did not know whether they were instructing the voters how to vote.

Appellant introduced two or three witnesses who corroborated him as to the absence of booths, and the voting on the tables, but these do not testify as to any fact or circumstance that would uphold a charge of fraud, coercion, intimidation, or bribery of voters. Their testimony only goes to the extent of showing that if persons were interested and made an effort, or were "tall enough" they might have seen how a voter marked his ballot. They give no specific instance of such observation. Giving appellant's proof full effect, it was not in our opinion sufficient to justify the lower court in throwing out the vote of this precinct, and thus disfranchise a fairly good number of voters.

As far as we have observed in the record the only evidence which shows or tends to show any illegal ballots cast in either precinct challenged, is that specifically related above. This could have as well occurred had the precinct been provided with necessary and proper paraphernalia. The proof does not bear out the charge that by reason of not having booths with curtains, so that the voting could and should have been in secret, a single illegal vote was cast. It is not shown that the omission, or the manner of voting had an effect on the result of the election. Where the arrangements for holding the election in a precinct were improvised and crude, but sufficient to afford a fair election, the court should not in-

validate the election. Muncy v. Duff, 194 Ky. 303, 239 S. W. 49; Eversole v. Croft, 216 Ky. 500, 287 S. W. 965, while the provisions of the Constitution as to secret voting are mandatory, if it appears that the election is fairly held and the vote fairly counted, the election is not to be invalidated. In Felts v. Edwards, 181 Ky. 287, 204 S. W. 145, where voting was in booths without curtains, and where there was a fair compliance with regard to secrecy, we held the election valid.

The proof here showed only an opportunity for persons to see how votes were marked or cast. In only one or two instances did the proof tend to sustain the charge. The record shows that the boxes in the questioned precincts were opened and a recount had, and showed no irregularity; at least no complaint is made on that score. Appellant testifies that he was around the voting place at times during the day; he made no complaint of the method or manner of voting or of the alleged activities of those who were working for appellee. These circumstances would not estop him from bringing his suit, but are considered upon the whole case, in which his proof did not sufficiently measure up to the serious charges made in his pleadings. There was neither charge nor proof that the election officers failed in respect of any legal duty. The presumption is that they conducted the voting according to law. The trial judge, no doubt, carefully considered the evidence, which in some parts was conflicting. We are always slow to override the findings of the trial judge, and never do so unless we are of the conclusion that the evidence preponderates against his finding, resolving any doubt as to correctness in the court's favor.

Judgment affirmed; mandate to issue forthwith.