James P. Cashen et al., Plaintiffs-Appellants, v. Board of Education, Pawnee Community Unit School District Number 11, Christian, Sangamon and Montgomery Counties, Illinois et al., Defendants-Appellees.

Gen. No. 9,951.

Opinion filed May 21, 1954. Released for publication June 7, 1954.

WILLIAM K. CAVANAGH, of Springfield, for appellants.

BARBER & BARBER, of Springfield, for appellees; CLAYTON J. BARBER, and ALTON G. HALL, both of Springfield, of counsel.

MR. JUSTICE CARROLL delivered the opinion of the court.

This is a suit in equity brought by plaintiffs, as taxpayers and electors of Pawnee Community Unit School District No. 11 in Sangamon, Christian and Montgomery counties, Illinois, in which it is sought to enjoin the defendants, individually and as members of the Board of Education of said District, from taking any action pursuant to authority received as a result of a special election held in said District on May 16, 1953.

This election was called by the Board of Education of said District under the provisions of article 5A of the School Code (Ill. Rev. Stats. 1951, chap. 122, Par. 5A—1 *et seq.* [Jones Ill. Stats. Ann. 123.774(1) et seq.]) for the purpose of submitting to the voters of said School District propositions (1) to purchase a ·site; (2) to build; (3) to issue bonds in the amount of $375,000; and (4) to select a site for a schoolhouse. The election was held in the Music Building on the

Pawnee Grade School grounds in the Village of Pawnee, from 12 o'clock noon until 7 o'clock p. m. The returns were canvassed by the Board of Education and it determined and declared that each of the said propositions had carried by a majority of the votes cast thereon.

Plaintiffs contend that the election in question was a nullity and should be held to be invalid and of no effect for the reason that the voters who participated in said election were not provided with an opportunity to cast their ballots in secret as required by sec. 5A—7, chap. 122, Ill. Rev. Stats. 1951 [Jones Ill. Stats. Ann. 123.774(7)], and by sec. 2, art. VII Constitution of the State of Illinois.

The music room in which the election was held, is a former one-room schoolhouse, being 31 feet long north and south, by 30 feet wide. Along the west side were three small rooms. Adjoining said rooms on the east was a large music room which was 23 feet wide east and west and 31 feet long north and south. Along the east wall of the music room was a wooden counter 31 feet long, 19½ inches wide and waist high. The entrance to the music room was through a door on the west side of the building. The two judges and clerk of the election sat at a desk 12 feet west of the counter and the ballot box was at the east side of the desk. The voters, after obtaining their ballots from the officials, went over to the counter, where pencils were provided, and marked their ballots. The counter was well lighted. There were no voting booths in the polling place.

Twelve witnesses testified for the plaintiffs. They include the 5 plaintiffs and 4 other persons who were all related to one or more of the plaintiffs. Three witnesses were not in any way related to the plaintiffs. The testimony of these witnesses was in general that they voted at the election in question; that a varying

number of persons from 1 to 8 voted at the counter at the same time; that there were conversations between certain voters; that assistance was given by some voters to others as they were voting; that the conversations were in nearly all instances between members of a family; that the ballots of other voters were or could be seen by the witnesses; that the distances between the voters varied from 6 inches to 6 feet; and that there was no place to vote other than the counter.

William Allen and John Bailey, the judges of the election, testified that the election was peaceful and quiet; that they did not observe any irregularities; and that they did not see any voters' marked ballots. Mame Hanlin, clerk of the election, testified that she did not see any voters giving or receiving assistance; that there were never more than 6 or 7 voting at the counter at one time; that this did not occur more than once of twice; and that usually there were 1, 2 or 3 at the voting counter at one time.

There is no evidence that any voter was deprived of his right to vote, nor is there any evidence of fraud or misconduct in the conducting of the election. Plaintiffs do not contend that the result of the election would have been different if the incidents of which they complain had not occurred. Section 5A—7 of the School Code provides in part as follows: "All officers designating or providing polling places shall provide in each polling place a means for the voter to mark his ballot in secret." Article 5A of that Code prescribes the regulations and procedures with respect to school elections. Section 5A—2 of said article [Ill. Rev. Stats. 1953, ch. 122, § 5A—2; Jones Ill. Stats. Ann. 123.774 (2)] provides as follows: "The provisions of the Election Code shall not apply to any elections held under this Article, unless expressly provided by this Article."

 In the recent case of *Zbinden v. Bond County Community Unit School Dist., No. 2*, 2 Ill.2d 232, it was contended that the provisions of the Election Code relative to providing voting booths should be read into the School Code. Rejecting such contention, the Supreme Court said:

"In the case now under consideration it cannot be contended that the legislature omitted anything essential to the conducting of school elections. Section 5A—7 of the School Code is complete in itself insofar as providing the voter with means to mark his ballot in secret. The legislature saw fit to leave it to the person or board calling the election to provide means and methods for secret voting. We hold that the provisions of the Election Code do not apply in school elections and, therefore, the only thing to here consider is whether, in the absence of fraud, the board of education reasonably complied with the quoted provision of the School Code by providing a means for secret ballot."

The foregoing Supreme Court decision eliminates the necessity for consideration of any constitutional right of the voters.

On the instant appeal, we are concerned only with the question as to whether the evidence shows there was a sufficient compliance with the requirements of section 5A—7 of the School Code. From the evidence it does not appear that any of the irregularities to which plaintiffs' witnesses testified resulted from the lack of adequate facilities to enable the voters to mark their ballot in secret. It was not disputed that the room in which the election was held contained a counter 31 feet in length upon which the voters marked their ballots. It also appears that not more than 8 persons ever voted at any one time. Thus, there was nearly 3 feet of the counter available for each voter when

engaged in marking his or her ballot. The fact that certain voters did not see fit to use the space provided for them to insure secrecy in marking their ballot cannot be attributed to any failure of duty on the part of the election officers. The duty of such officers was only to provide the necessary "means for the voter to mark his ballot in secret vote."

The evidence does not indicate that the conversations between voters to which plaintiffs' witnesses testified resulted from anything other than an indifference upon the part of the voters involved to their right to cast a secret ballot. No suggestion is offered by the evidence that any of the voters could not have voted in secret had they been so inclined, nor that they were prevented from so doing by any act or omission of the officers in charge.

■ Upon the evidence in this record, we are constrained to hold that there was a sufficient compliance by the Board of Education and election officials with the requirements of the Election Code for a secret ballot in school elections.

■ ■ It should also be observed that in numerous cases the Supreme Court has held that even though there may be a failure by election officials to strictly comply with the requirements of section 5A—7 of the School Code, nevertheless an election will not be invalidated because of such irregularity where such irregularity did not change the result of the election or deprive any of the electors of their right to vote. *Weston v. Markgraf,* 328 Ill. 576; *Patterson v. Johnston,* 328 Ill. 101; *People v. Graham,* 267 Ill. 426. In the instant case it appears that each of the propositions submitted to the electors carried by substantial majorities. If the ballots of those electors to which plaintiffs' witnesses have referred were excluded, it could not change the results of the election. Supported by numerous Illinois authorities and cases from other juris-

dictions is the rule that where irregularities do not prevent any voter from voting as he desires and where it does not appear that the result of the election was in any way affected by the same, an election will not be invalidated because of such irregularities. *People v. Brown,* 306 Ill. 245, *Holley v. Burke,* 300 Ky. 571, 189 S.W.2d 862. We think the rule as announced in these cases is applicable to the facts in the instant case.

Upon careful consideration of the evidence in the instant case, we are of the opinion that while there may have been a lack of strict compliance with said section 5A—7 of the School Code, nevertheless, the voters at said election were provided with a means for marking their ballots in secret within the meaning of the aforesaid section of the School Code.

The decree of the circuit court of Sangamon county is affirmed.

*Affirmed.*