## Johnson v. Caddell et al.

(Decided Oct. 13, 1933.)

J. B. JOHNSON and TYE, SILER, GILLIS & SILER for appellant.

A. M. CADDELL, STEPHENS & STEELY, POPE & UPTON, and C. S. WILSON for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

At the primary election held August 5, 1933, in Whitley county, there were three candidates for the Republican nomination for the office of county attorney. They were Maurine Sharp, A. M. Caddell, and J. B. Johnson.

On the official count of the ballots made by the Whitley county board of election commissioners, there were, on the face of the returns counted for these three candidates, the following number of votes:

Maurine Sharp, 1,308.

A. M. Caddell, 3,471.

J. B. Johnson, 3,441.

By this count of the votes, it was determined that Caddell received a plurality of the ballots cast and a majority of 30 more than Johnson. Upon this count of the ballots, it was disclosed that in the Mastertown precinct, No. 33, and the Corbin precinct, No. 7, a total of 334 votes was cast in this race, but that all of the ballots therein cast, though signed by the clerk of the election, were not signed by a judge of the election, and for such reason they were all treated by the canvassing

board as illegal ballots and not counted for either party. Of the 334 ballots thus cast in this race in these two precincts, Johnson received a majority of 38 votes over Caddell.

Also, it is disclosed by the record that in the South American precinct, No. 13, the election officers adopted sundry and divers methods of signing the ballots given the voters. At this precinct, Johnson received a majority of 5 over Caddell of the ballots signed by the clerk and a judge; a majority of 2 of those signed by the clerk only; a majority of 14 of the ballots on which the clerk and a judge had signed their names only by their initials; and Caddell a majority of one of the ballots signed by the name of the clerk and the initials only of a judge.

Complaining of this count as made and the rejection of the ballots by the election commissioners, the contestant, Johnson, filed in the Whitley circuit court his petition seeking a recount of the ballots.

On the recount of the ballots ordered and made in the circuit court, the ballot boxes in the precincts of Mastertown and Corbin were first opened and the ballots counted and tabulated for the persons for whom cast, whereby it was disclosed that Johnson received 38 more of the votes cast in these two precincts than Caddell; but the court, in rendering final judgment on the recount, adjudged that the ballots cast in these two precincts, all of which were unsigned by a judge of the election, were invalid and should not be counted for either of the contesting candidates seeking the nomination for county attorney. Also it adjudged that such of the ballots as were signed only by the initials of a judge of the election were valid when so signed and should be counted for the one cast. Pursuant to such rulings, it further adjudged that in the said primary after eliminating the ballots of these two precincts, there were cast and should be counted for the contestant, Johnson, 3,437 legal votes, and for the contestee, A. M. Caddell, 3,460 legal votes, and therefore adjudged that on such recount of the ballots, A. M. Caddell received a majority of 23 more votes than J. B. Johnson and was entitled to the certificate of nomination.

From this judgment this appeal is prosecuted, wherein the appellant and contestant, Johnson, most

earnestly insists that all of the ballots cast by the voters in the Mastertown and Corbin precincts were valid ballots, even though not signed by a judge of the election, and should be counted for the persons for whom cast. Also, he contends that c. 82 of the Acts of 1932, amending section 1460 of the Statutes, dealing with final elections, even if held to be valid and construed as mandatory, is yet not applicable to nor controlling of the validity of these contested ballots cast in this primary election, for the reason that it is controlled solely, he insists, by section 1550-24 of the primary election law, requiring the ballots to be signed only by the clerk of the election, and which section of the 1932 act, he claims, does not purport, either expressly or by implication, to amend or repeal.

If these 334 ballots, unsigned by a judge of the election, which were thus cast in the Mastertown and Corbin precincts for contestant and contestee, and of which number Johnson, the contestant, received a majority of 38 over Caddell, are to be held valid and counted for him, it would result that on the face of the county returns as recounted when rejecting them, he will then have received a majority of all the votes cast in the county for the nomination for the office of county attorney; but if these votes are eliminated from the recount for invalidity because not so signed, as was adjudged, Caddell is shown to be the winner of the nomination.

This contention of appellant presents: First, as the principal question to be determined upon this appeal, whether the 1932 amended statutory provision, requiring that a ballot be signed by a judge of an election, renders it mandatory that all ballots, whether cast in a primary or a general election, shall be signed by a judge of the election, with his name, to make them valid and permit their being counted for the candidate for whom cast, and, second, whether the signing of the ballots by a judge only with his initials is a lawful or adequate compliance with the statute requiring that a judge of an election shall *sign his name* on the back of the ballot before handing it to the voter.

The 1932 session of the General Assembly passed the act under consideration to amend and re-enact section 1460 of the 1930 Edition of Carroll's Kentucky

Statutes, which is now chapter 82, Acts of 1932, and section 1460, Kentucky Statutes, Baldwin's 1932 Supplement. This court very recently interpreting and construing in an injunction proceeding before it, the legislative purpose declared in this amendment, said:

"Prior to the enactment of the foregoing act, it had been developed on the hearing of several election contests not only that the ballot boxes had been stuffed with additional ballots not voted, but that ballots had been substituted for those actually voted. To prevent a recurrence of such violation of the election law and in order to make it certain that the ballots in the box were those handed to the voters and actually voted by them, the General Assembly saw fit to provide by the act in question that, after the ballot had been detached from the stub in the book of ballots and before the ballot was delivered to the voter, one of the judges should sign his name on the blank line on the back of the ballot and that no ballot not so signed by one of the judges should be counted by the canvassing board."

And further, in determining what was the proper effect and construction to be given this language of the amended statute, said:

"While there are many provisions of the statutes regulating elections that are regarded as merely directory, the courts are not at liberty to disregard the legislative will concerning a matter with which it has power to deal and when the legislature solemnly declares that a ballot not signed on the back by one of the judges shall not be counted, there is no escape from the conclusion that the provision is mandatory and must be given effect."

A careful review of the legislative history of these election statutes and the evident intent and purpose of the General Assembly therein, prompting it in the enactment both of these general and primary election laws, lead us to conclude, after a careful consideration of the arguments advanced by appellant, that his contentions here made, that section 1460 as amended is neither mandatory nor applicable for determining the validity of ballots cast in a primary election is not to be sustained.

Prior to 1930, the manner of voting and the duties

of the officers in connection therewith were prescribed for general elections by sections 1471 and 1472 of the Statutes, and for primary elections by section 1550-24 of the Statutes. Many of the provisions of each of these sections were altered and affected by the Brock-Gilbert Election Law, chapter 49 of the Acts of 1930, especially with reference to the voter depositing his own ballot in the ballot boxes and forbidding the election officers to take possession of or to have in their possession the ballot after it had been handed to the voter.

Section 1550-17 of the primary election law (as amended by Acts 1932, c. 85) provides that the ballots in primary elections shall be printed in substantially the same manner as provided by law in the case of regular elections, with certain exceptions not here material but set out in that section.

The provisions of the general election law regulating the printing and preparation of the ballot is embodied, at least in part, in section 1460, Kentucky Statutes, 1930 Edition, which was amended by chapter 82 of the Acts of 1932. Prior to the amendment of 1932, this section 1460 did not deal with the duties of the election officers at the polls in the matter of preparing the ballot for the voter to vote. That duty, as stated, was taken care of by section 1471 for general elections and section 1550-24 for primary elections. So far as the signatures on the ballots were concerned, section 1460 prior to 1932 simply provided that there should be printed on the ballot the facsimile signature of the county clerk who had caused the ballot to be printed. By the 1932 amendment, there was added to this section 1460 the requirement that there should be printed on the back of the ballot a blank line, followed by the word "Judge," upon which line one of the judges of the election should sign his name before the ballot was delivered to the voter, and that no ballot not so signed should be counted by the canvassing board whose duty is to certify the results of the election. Section 1550-17, requiring that ballots in the primary election shall be printed in the same fashion as the ballots in the general election, requires, therefore, that the primary ballots be printed in accordance with the provisions of section 1460 as amended by the 1932 act. This being true, the law requires, because of the provisions of sec-

tion 1550-17, the printing of a blank line with the word "Judge" thereafter on primary ballots, with no express provisions in the primary act as to what shall be done with this blank line in primary elections. Section 1550-36 of the primary act provides in part that any omission in the primary act shall be supplied as nearly as practicable from the statutes governing the November election. There being a clear omission in the primary act as to what shall be done with the line followed by the word "Judge," which the primary act requires by virtue of section 1550-17 to be printed on the primary ballot in order that it shall be printed in the same fashion as ballots in the general election, it follows that such omission must, because of the provisions of section 1550-36, be supplied from the general election law, and to do this we must look to the amendment of 1932 to section 1460 of the Statutes, which requires a judge of the election to sign his name to the ballot before it is handed to the voter and without which signature the ballot cannot be counted.

To such effect, and in harmony with this our conclusion, is the holding of the lower court in adjudging that those ballots cast in the three precincts, Nos. 33, 7, and 13, in this primary election held August 5, 1933, which were not signed on the blank line followed by the word "Judge," appearing on the back of the ballot, by one of the election judges, were invalid and not to be counted for either party, as we conclude it is mandatorily required by section 1460 of the Statutes as amended that all ballots be signed by a judge of the election. It follows that unsigned ballots are illegal and should not be counted by the canvassing board and the judgment to such extent in so holding is therefore approved.

There is further raised and presented by the record before us yet another question for our determination, which is whether the requirement of section 1460 of the Statutes, as amended by chapter 82 of the 1932 Acts of the General Assembly, that one of the judges of an election shall *sign his name* on such blank line appearing on the back of the ballot followed by the word "Judge," is met or lawfully complied with by such judge signing only the initials of his name thereon.

The purpose and intent of requiring the signature of an officer to an instrument is for authenticating it.

The evident purpose of the General Assembly in its enactment of this amendment, requiring that unless this blank line on the back of a ballot, with the word "Judge" thereafter, was signed with the name of a judge of the election it should not be counted, was to further safeguard the fairness of the election and to make certain that the ballots placed in the box, as voted, were the identical ones handed to the voters and actually voted by them. To this end, requiring a judge to sign his name to the ballots handed the voters could most reasonably be expected to materially contribute to their more certain identification as being the ballots voted by them.

The mandatory statute being thus designed to secure the integrity and purity of the ballot, its provision requiring a judge to *sign his name* thereon looking, as it does, to this end should be not only construed as mandatory but also held to require a substantial, or even strict, compliance with its literal requirement that he *sign his name,* lest its salutary and helpful purpose of effectual identification of the voted ballot be defeated through inadequate compliance therewith, and result in the less sure and certain authentication of the ballots placed in the box as being only those that were clearly shown by the signed surname of the judge thereon, to have been by him in fact handed to and legally cast by the voters.

What form of signature then, when considered in the light of best serving to realize this legislative purpose, should be held to be an effectual compliance with the requirement that a judge should sign his name upon the ballot?

The signing of the ballot by a judge is an official signature of an election officer. The general rule is as to official signatures that the surname at least is an essential part of it and that the mere initials of the subscribing officer do not constitute a signing of his name or a signature in legal proceedings.

In the case of Fairbanks v. Beard, 247 Mass. 8, 141 N. E. 590, 591, 30 A. L. R. 698, it was held that a judge could not authenticate a judgment by affixing thereto only his initials; the court adding that:

> "Judicial action ought to be manifested and authenticated by the writing of the distinctive char-

acterization in words by which he was commissioned, by which he is known and distinguished. from others and which constitutes his name. * * * Private obligations may stand on a different footing. Sanborn v. Flagler, 9 Allen, 474.''

Also in Origet v. United States, 125 U. S. 244, 8. S. Ct. 846, 31 L. Ed. 745, it was held, under the statute providing that a bill of exceptions allowed in any cause shall be deemed sufficiently authenticated if signed by the judge of the court in which the cause was tried, that the initials of the judge to an order should not be regarded as the signature of the judge or as sufficient authentication of the bill of exceptions. To like effect,. see Smith v. Geiger, 202 N. Y. 306, 95 N. E. 706.

It is not open to controversy that the signing by an. officer of an instrument, with the distinctive characterization in words by which he is known and distinguished from others and which constitutes his name, is a more certain authentication and surer identification of the particular instrument having been actually signed by the officer than if the instrument merely bore the inscription of the initials of the officer, which well might be likewise the initials of many others, and as also making it easier to falsify or forge the subscription where made in the mere initials than would obtain in the case of writing the full name.

We are thus led to conclude, out of a full regard for the worthy purpose here aimed at by the statute, in requiring the *writing of his name* (rather than only his initials) by a judge of the election, on the ballot, with the intent to safeguard its identity and sure authentication, is best realized and effectuated through. holding that the required signing of the judge's name upon the ballot should mean, and does here mean, the writing by him of his full name, or at least of his initials and surname, thereon. This construction of the statutory provision, we conceive, is best calculated to secure and safeguard the integrity of the ballot contemplated in its enactment.

For the reasons above indicated, we are of the opinion that the judgment of the lower court, in so far as it held the signing of his name by a judge of the election only in his initials upon the back of the ballot to be a sufficient compliance with the statute's requirement that he sign his name thereon, was erroneous; but.

that part of the judgment holding to be invalid and illegal the ballots cast in this primary election which were unsigned by a judge thereof, upon the ground that they violated the mandatory provision of the 1932 act requiring such signing of the ballots being in accord with our views herein expressed, is to such extent upheld and affirmed.

From this it follows that, after eliminating, as adjudged, those illegal ballots cast in this primary election which were unsigned by a judge of the election and also those that were improperly signed by him with his initials only, the lower court properly adjudged subject to its further correction by elimination of these initialed ballots that the contestee, Caddell, received the majority of legal votes cast for the Republican nomination for the office of county attorney of Whitley county, in so far as the questions of contest here presented are determined, and its judgment when so modified is affirmed, both on the appeal and cross-appeal.