## Wurts v. Newsome.

(Decided Feb. 6, 1934.)

GEORGE B. MARTIN and H. F. PRICE for appellant.
PORTER M. GRAY and STROTHER HYNES for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

At the regular election held on November 7, 1933, T. N. Newsome, Jr., was the Republican candidate, and Dan W. Wurts was the Democratic candidate, for the office of commissioner in the third district of Boyd county. As counted by the board of election commissioners, Wurts received 6,966 votes and Newsome 6,943 votes, thus giving Wurts a majority of 23. On November 17th following, Newsome filed his petition in the Boyd circuit court asking a recount of the ballots on the ground that by fraud or mistake the election commissioners incorrectly counted, tabulated, and recorded the votes cast, in that they failed to count a large number of legal votes that were cast for plaintiff, and counted for the defendant more votes than he received, and further alleged that a correct recount of the ballots would show that plaintiff received more votes than the defendant. After hearing evidence as to the integrity of the ballots, the court ordered a recount, with the result that Newsome received 6,694 votes and Wurts 6,672 votes. Following this finding the court ordered the election certificate issued to Wurts to be canceled, and directed the commissioners to issue a certificate of election to Newsome. Wurts appeals.

Our conclusions on the various questions presented are as follows:

1. The court held that the integrity of the ballots was satisfactorily shown, and after a careful consideration of all the evidence we see no reason to disturb the court's finding on that question.

2. The right of the court to recount the ballots was challenged on the ground that the statute requires that the petition be filed before the certificate is issued, and that the evidence was insufficient to show that such was the case. The language of the statute, section 1596a-12, Kentucky Statutes, Baldwin's 1933 Supplement, is:

"Provided that if either party desire a recount of the ballots before certificate is issued he shall make request therefor in his petition or answer within ten days after the day of election."

Later on the statute contains these words:

"This proceeding for immediate recount may be asked and prosecuted in the same suit with regular

contest grounds, but shall not await the preparation of trial of said contest in either court.''

With the exception of the proviso, and certain changes not material to this controversy, the statute, which was enacted in 1930, is substantially the same as section 1596a-12, Kentucky Statutes. Under that statute fraud or mistake of election officers in counting the ballots was a ground of contest. Wolff v. Clark, 212 Ky. 435, 279 S. W. 658. This ground of contest is not only preserved by the general language of the 1930 amendment, but is specifically provided for by the words, ''This proceeding for immediate recount may be asked and prosecuted in the same suit with regular contest grounds.'' In short, the statute provides two methods of obtaining a recount, one by request, without stating any grounds therefor, and the other by contest on the ground of fraud or mistake on the part of the election commissioners. Whether the first method mandatorily requires that the pleading asking for a recount be filed before the certificate is issued, we deem it unnecessary to determine. Here Newsome asked for a recount on the ground of fraud or mistake of the election commissioners. In the circumstances his petition contained all the elements necessary for a regular contest and, having been filed within the time prescribed by the statute, was sufficient to authorize a recount, even though it was not filed until after the certificate was issued. It follows that the court did not err in ordering a recount.

3. The statute provides that there shall be printed on the back of the ballot a blank line followed by the word ''judge,'' and that after the ballot has been detached from the stub, and before the ballot is delivered to the voter to be voted on, one of the judges shall sign his name on such blank line, and no ballot not so signed by one of the judges shall be counted by the canvassing board, whose duty it is to certify the result of the election. Section 1460, Kentucky Statutes, Baldwin's 1933 Supplement. In Durbin precinct No. 10, there was a judge by the name of Boyd Bluebaum. All but six votes cast in the precinct were signed either ''Boyd B.'' or ''B. B.,'' and no other judge of the election signed the ballots. The statute is mandatory. The surname is an essential part of an official signature, and the signing by initials, or by one's given name, followed by the initial of his surname, is not a substantial compliance

with the statute.  Johnson v. Caddell, 250 Ky. 640, 63 S. W. (2d) 810.

4. In Haney precinct No. 52, 133 ballots were cast for Wurts and 112 ballots were cast for Newsome, on all of which there appeared after the word "judge" the name "J. R. Simpson," one of the judges, which name was stamped on the ballots by a rubber stamp in block type letters in ink.  These ballots the court declined to count, and the correctness of this ruling is decisive of the recount.  In support of the ruling appellee relies upon Kirkpatrick v. Deegans, Board of Canvassers of Fayette County, 53 W. Va. 275, 44 S. E. 465.  The statute under consideration in that case required each poll clerk to "write his name" on the back of each election ballot sheet before it was delivered to the voter, and provided that any ballot which was not so indorsed with the names of the poll clerks should not be counted.  The court held that the words "shall write his name" mean that the name of each poll clerk shall be placed on the back of each ballot voted in his own handwriting, and the ballots on which the names of both poll clerks were written by one of them, or by some other person, were void, and could not be counted.  In reaching this conclusion a majority of the court conceded that in cases of private contract a person may have his name written by another in his presence, and thereby bind himself, but pointed out that the rule should not apply where the rights of the public were involved and the purpose of the signature was to identify the ballots and prevent fraud in elections.  One of the judges concurred on the ground that the statute specifically provided that each poll clerk *shall write* his name on the ballot before the ballot is delivered to the voter.  Two other judges dissented.  There is substantial reason for the ruling of the court, in that the West Virginia statute provides that "each poll clerk shall write his name," and clearly that cannot be done by any other person.  With respect to the authentication of a document affecting the public, our court has taken a different view.  Thus in Lamaster v. Wilkerson, 143 Ky. 226, 136 S. W. 217, there was involved the validity of the notice of an election for a bond issue.  The notice was attacked on the ground that posters were not signed by the members of the board of trustees in their own handwriting, but their names were merely printed on the posters.  After holding that "to sign," in legal contemplation, means to

attach a name or cause it to be attached, by any of the known methods of impressing the name on paper, with the intention of signing it, and calling attention to the fact that signatures adopted by persons are sufficient to give validity to instruments, even though typewritten or printed, the court held that it will be presumed, in the absence of a showing to the contrary, that the trustees attached their official signatures to the notices prepared by them of the time and place of holding the election for the issuance of the bonds, or, if the notice was printed on the posters, that they authorized the printing of their names thereon and adopted them as their legal signatures. The language of our statute is not "shall write his name," but "shall sign his name." The use of a rubber stamp is one of the known methods by which this may be accomplished. Where the ballot is required to be signed by one of the judges before it is placed in the ballot box, the presumption is that the signature on the ballot is the act of the judge purporting to sign. No reason is perceived why he may not perform this act by means of a rubber stamp, as well as writing the signature himself. The opportunities for fraud when a rubber stamp is used are no greater than the opportunities for fraud by forgery. It would be just as difficult to ascertain that the ballots had not been signed, and have a rubber stamp prepared, as it would be to employ one to imitate the signature of the judge who failed to sign. Besides, the statute, though designed to prevent fraud, has operated in several instances to defeat the popular will. In numerous contests that have come before this court, the successful candidate has lost by the failure of one of the judges, either through ignorance, mistake, or fraud to sign the ballots. In the circumstances we are not inclined to go further and adopt a construction so technical as to make the situation even worse. A rubber stamp identifies the ballot just as clearly as the written signature of the judge. If not placed on the ballot either by him, or some one else in his presence, and at his direction while the election is being conducted, that may be shown in a contest just as it may be shown that the written signature appearing on the ballot was not his act. We therefore conclude that the signing of the ballots by a rubber stamp was a substantial compliance with the statute, and that all the ballots so signed should have been counted.

5. All the judges participated in the recount, and our conclusions were unanimous. In view of the number of ballots involved, it is not practicable to discuss each ballot and give the reason for our conclusion. It is sufficient to say that wherever there was a mark in front of either candidate's name, and it was reasonably apparent that the mark was made by the voter and not caused in some other way, the ballot was counted. On the other hand, if it was reasonably apparent from the character of the mark, or from other marks appearing on the ballot, that the mark appearing in front of either candidate's name was not the act of the voter, but was a smear resulting from the folding of the ballot, the ballot was not counted.

Of the ballots in Wurts Exhibit No. 1 which were not counted for Wurts by the trial court, we counted the first and tenth ballots for Wurts, thus making a gain of 2 for Wurts.

Of the ballots in Newsome Exhibit A which were not counted for Newsome by the circuit court, we counted for Newsome the seventh ballot, thus making a gain of 1 for Newsome.

Of the ballots in Newsome Exhibit B, the first and second ballots should not have been counted for Wurts, thus making a gain of 2 for Newsome.

Of the ballots in Wurts Exhibit No. 2, the ninth, eleventh, fifteenth, seventeenth, and nineteenth ballots should not have been counted for Newsome, thus making a gain of 5 for Wurts. In reaching this conclusion it is very doubtful whether the fourth and fifth ballots should be counted for Newsome, but we have given him the benefit of the doubt.

Before the recount, Newsome had 22 more votes than Wurts, and gained 3 more more votes on the recount. Wurts gained 21 votes by counting the ballots on which the name of the judge was signed by stamp, and 7 more votes by the count of other ballots, thus giving him a total gain of 28 votes. The result is that Wurts was elected by a majority of 3 votes.

This conclusion makes it unnecessary to determine whether other ballots claimed to have been voted for Wurts should have been counted.

It follows that the court erred in adjudging that

Newsome was elected, and that Wurts' certificate of election should be canceled.

Judgment reversed, and cause remanded, with directions to enter judgment in conformity with this opinion.

Whole court sitting.