## Wright v. Crase.

(Decided Feb. 11, 1938.)

(As Modified on Denial of Rehearing April 19, 1938.)

BURKE & SANDERS and JOHN E. CAMPBELL for appellant.

A. F. CHILDERS, H. C. FAULKNER, D. I. DAY, L. E. HARVIE and STEPHENS COMBS, JR., for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

Appellant was the Democratic candidate for county judge of Letcher county at the November, 1937, election, and appellee the Republican candidate. The election commissioners, after canvassing the returns, certified that appellant had received 5,291 votes and appellee 5,437.

By a petition, prepared and filed in conformity with section 1596a-12, Kentucky Statutes, appellant sought.

a recount of the ballots in all the 54 voting precincts of the county. Upon the filing of the petition the clerk of the court, and the court, took all steps required by the Statute, supra, and appellant executed the necessary bond, whereupon the court by order fixed November 22d as the day for the recounting; that order certified to the chief justice of this court that the regular judge was unable to preside, solely because he was to hold a regular term of his court in another county, on the date above mentioned. A special judge was duly appointed and commissioned, entering upon his duties on November 22d. The record shows the hearing consumed eight days of tedious labor, carefully performed.

Upon the appearance of the special judge, certain pleadings were filed denying the allegations of the petition, and challenging the integrity of the ballots, upon which latter question the court heard proof, adjudging that the ballots had been properly preserved. Appellee is contending the proof showed that there had not been such care of the ballots as justified the court in holding as he did. A review of the evidence here presented leads us to the conclusion that the court correctly decided this question.

Appellee has moved this court to strike the bill of exceptions, and to strike from the files 103 ballots not inclosed in the Neon precinct box, but later brought here by order of this court. This latter motion was based on the contention that their integrity was not properly preserved between the time the recount ended and the date they were brought to this court. Affidavits filed indicate otherwise, and an inspection of the 103 ballots shows that they are in the same condition as described by the court in his remarks. The first motion is based on the claim that the special judge neither signed the bill of exceptions, nor extended the time for signing and the bill was later signed by the regular judge. Upon consideration of the motions and arguments thereon, the motions are overruled.

Appellant challenges the findings of the court upon returns from the following precincts: Neon, No. 31; Kona, No. 35; Coyle's Branch, No. 53; West Jenkins, No. 26; Baker, No. 5; Colson, No. 3; and West Whitesburg, No. 17. At his instance the ballot boxes, paraphernalia, etc., used in the first 4 above-named precincts have been transferred to this court, as well as 103 ballots from Neon precinct, mentioned above. As to the

other named precincts, neither boxes nor ballots have been brought here, hence we have nothing to examine. In regard to the ballots challenged in the 3 named precincts, because of defects appearing, we uphold the lower court's finding, on the ground that the ballots themselves constituted the sole evidence of any alleged irregularities. This proof not being before us, we conclude that the court correctly disposed of them.

In West Jenkins there were 230 votes cast in the county races. Thirty-one were not voted in the county judge's race, thus leaving 299 ballots to be considered, appellant receiving 120 and appellee 179. Of the 120 for appellant, 1 ballot not indorsed on the back by any officer was rejected, leaving appellant 119 votes. Of the 179 ballots cast for appellee, appellant objected to the counting of 7 ballots, because the name of the judge who signed was "B. H. Sexton," whereas on these 7 ballots the name was signed "H. B. Sexton." The court refused to expunge these 7 votes, holding that the signature as it appeared was a substantial compliance with the provisions of the Statute in respect of the signing by the officer. This left appellee's vote 179 and appellant's 119. We agree with the court's ruling, since it is not claimed that these questioned ballots were not in fact signed by B. H. Sexton, or by some one in his presence, and by his authority. We have inspected all the ballots cast in this precinct, and find that 13 of appellee's and 5 of appellant's ballots were signed in the same manner. If the claim of appellant should be upheld, and all these ballots be rejected, it would not materially change the result as reached by the canvassing board and the special judge.

In Coyle's Branch No. 53, there were 55 ballots cast in the county races, 47 for appellee and 4 for appellant. Appellant objected to the counting of any of the 47 votes for appellee because they bore the name of "Henry Lewis, Judge" on the back thereof, whereas his name was, "Henry Lewis, Jr.," as appeared on the registration sheet and on his ballot stub. The court, after inspection of the ballots, the stub book, and the registration sheet, overruled this objection. No other Henry Lewis showed on the registration list, and none other of the same, or similar name, was shown to have participated in the election. We are of the opinion that the court correctly ruled on this contention, since the writing of the full name, omitting the designation "Jr."

was a substantial compliance with the Statute, and it is not contended that Henry Lewis, Jr., the officer, did not indorse the ballots.

In Kona precinct No. 35, 316 ballots had been cast in the county races; of this number appellee received 160 and appellant 137. Five of the ballots were rejected, 1 because improperly signed; 2 because signed only by the election clerk; and 2 not signed at all. Three of these had been cast for appellant and 2 for appellee. We agree with the ruling of the special judge as to these questioned ballots.

Of the number of votes cast for appellant there were 99 indorsed "'J. W. Bats," when as a matter of fact the officer's name was "J. W. Bates." Of the ballots cast for appellee 118 were signed "J. W. Bats." The court held that all the ballots showing the name "Bats" rather than "Bates" contained a sufficient signature, and counted the questioned ballots for each of the contesting parties as they were cast. We have examined these ballots, and it seems to be apparent that in writing his name hurriedly, the officer failed to plainly add the letter "e" as he did on the unquestioned ballots. We agree with the court below on his recount of the vote in this precinct.

In Neon precinct No. 31, 570 ballots had been cast in the county races. It was agreed by the parties that 26 of this number had not been marked for either candidate; that 80 of the number had been properly cast for appellant and 93 for appellee. Of the remaining 371, it was agreed that 111 were cast for appellant and 157 for appellee, and it was further agreed that 268 of the remaining 371 ballots, 157 of which had been cast for appellee, and 111 for appellant, were indorsed on the back by the initials only of the election officers, and therefore not to be counted for either candidate. This left in dispute 103 ballots, 70 cast for appellee and 32 for appellant. These are the 103 ballots brought here by order of this court. The contention is that none of them should be counted, because of the insufficiency of signature of the election judge.

The court below eliminated 2 of the ballots cast for appellant on this ground, and 1 because of a total lack of signature, leaving 29 out of 32 accredited to appellant. The appellant objected to the counting of 69 of the 70 of the 103 ballots for appellee on the ground of

insufficiency of signature, and 1 because the ballot was marked in the square opposite appellee's name with a red pencil. The court held this ballot properly marked and upon inspection we agree with the court's ruling thereon. Of the remaining 69, the court excluded 12 from appellee's count because of insufficiency of signature, but held that 57 bore such signatures as substantially met the requirements of the statute. The result of the lower court's recount gave appellee 150 votes and appellant 109.

It will be noted that the court rejected 268 ballots in this precinct because there appeared above the designation "Judge," only the initials "W. S. T." The name of one of the judges was W. S. Tolliver. It so appears on many of the ballots, and on certain certificates. On some of the 103 ballots which the lower court inspected, and as we have carefully done, there appeared the initials "W. S. T.," followed by a waving line covering about the same space as would be covered by the letters "olliver" as the name appears elsewhere. In some cases, by close inspection, the name "Tolliver" is discernible. In others there is nothing more than the irregular line mentioned above, which could not be regarded as his signature. We have laid aside all those ballots where there appears only this line, but have accredited those, and only those, where it has been possible to distinguish the name "Tolliver" when the ballots have been compared with those bearing his signature.

As a result of our inspection and consideration of the 103 ballots, we have determined that in addition to the 12 ballots returned for appellee, and rejected by the lower court, there are 17 others upon which the name cannot be made out, making a total of 29 not to be counted for appellee. We have also determined that there are 19 ballots accredited to appellant by the re-counting court which are in the same condition as the 29 above described. These are taken from appellant's total, resulting in a gain of two votes by appellee.

It appears that in Baker precinct A. V. Adams was one of the judges. Appellant moved that Adams be allowed to testify that he did not sign any of the ballots, but that Francis Beckett was called from the outside and signed the name of Adams on all the ballots issued. The court overruled this motion and appel-

lants are contending that such ruling was erroneous. No affidavits in support of the charge made were filed. In absence of such, we are to measure the court's ruling solely upon the avowal. It is not avowed that Frankie Beckett was not sworn; it is not said that the ballots were signed in the absence of Adams, nor that Frankie Beckett was not fully authorized to sign, and that the signing was not in the presence of Adams and the other officers. It may be doubted, but not now decided, that this contention is one not properly raised under the recount statute, but should be subject to a contest, for if the signing was done without such authority, and under such circumstances as mentioned, it would amount to the practice of a fraud. In Wurts v. Newsome, 253 Ky. 38, 68 S. W. (2d) 448, 450, we held that the name of an officer may be indorsed on the ballot by means of a rubber stamp, but "if not placed on the ballot either by him [the officer], or some one else in his presence, and at his direction while the election is being conducted, that may be shown in a contest just as it may be shown that the written signature appearing on the ballot was not his act." We conclude that under the showing tendered the court properly ruled on this contention.

In closing this opinion, we feel constrained to say we have had some difficulty in performing the task which the Statute imposes, due to a lack of identification of challenged ballots, or guide as to the court's disposition of some, except as indicated in his remarks thereon. The task would have been easier if the parties, by stipulation, or the court on its own motion had adopted some simple method of identifying questioned ballots and indicating by a similar method the disposition of such ballots.

We are of the opinion that the court below reached correct conclusions on the recount in respect of all questioned ballots, which we have found it necessary to recount, except as above noted. In the Neon precinct, as we have indicated, appellee gained 2 votes, which should be added to the lower court's determined majority of 60. The court below is directed to modify the judgment entered on November 30, 1937, to the extent indicated.

Judgment affirmed.

The whole court sitting.

Ratliff, J., dissents from so much of the opinion as accredits any additional ballots or votes to appellee, on the ground that, in the absence of counterclaim or cross appeal by appellee, he was not entitled to such accredited votes.