**HOWARD v. ROWLAND et al.**

Court of Appeals of Kentucky.

Sept. 29, 1953.

J. S. Greene, Jr., Harlan, for appellant.

J. B. Johnson, Harlan, for appellees.

CULLEN, Commissioner.

Following the August 1953 primary election, S. H. Rowland, Jr., was certified to be

the winner of the Republican nomination for the office of county judge of Harlan County, by a margin of nine votes over his opponent, Orville M. Howard. Howard instituted a recount proceeding, as a result of which Rowland was declared still to be the victor, but by a margin of only one vote. Howard has appealed from the judgment in the recount case.

It is necessary first to dispose of the contention of Rowland that a recount was not authorized because the petition did not allege that the integrity of the ballots had been preserved, and because there was not adequate proof of the integrity of the ballots.

■ As concerns the necessity to allege integrity of the ballots, we do not find any such requirement in the statute or in our decisions. The statute, KRS 122.060, requires *proof* of integrity, but the only requirement in the way of pleading is a simple petition requesting a recount. Both parties know, from the statute, that the integrity must be proved, so an allegation of integrity would serve no useful purpose. The decision in Ferguson v. Gregory, 216 Ky. 382, 287 S.W. 952, supports our conclusion that pleading the integrity of the ballots is not necessary.

■ As concerns the adequacy of the proof of integrity of the ballots, there was ample proof that the boxes were carefully guarded, day and night, from the time the election commissioners completed their work of counting the ballots until the boxes were delivered to the circuit court for the purpose of the recount. The proof shows that there was no opportunity for the boxes to be tampered with, and there was nothing about the ballots themselves to indicate any tampering. The only suggestion of lack of integrity arises from the fact that when the ballot boxes were delivered to the circuit court for the purpose of the recount, some of the boxes did not have all three of the lid locks securely locked, and on two or three of the boxes the vent lock was not fastened. The county clerk's deputies who removed the boxes to the county clerk's

office after the election commissioners had completed the original count testified that at that time all of the boxes were securely locked, and therefore the argument is made that some of the boxes must have been tampered with notwithstanding the positive evidence of lack of opportunity for tampering. The county clerk's deputies did not testify that they carefully checked each lock on each box when they picked them up to take them to the county clerk's office, and we think a reasonable interpretation of their testimony is that the boxes all *appeared* to be securely locked. In any event, we think the evidence was sufficient to support the chancellor's finding that the integrity of the ballots was properly preserved.

■ Another contention of Rowland, which if decided in his favor would dispose of the case, was that the ballots from five precincts should not have been counted because in those precincts the election officers did not sign the stub books so as to enable a determination to be made from the election papers as to who actually were the election officers in those precincts. The argument is that under our decision in Hogg v. Howard, Ky., 242 S.W.2d 626, a ballot may not be counted, in a simple recount proceeding, unless it appears from an examination of the stub book or other election papers that the person whose name is signed on the back of the ballot as a purported judge of the election actually served as a judge of the election. The argument misconstrues the holding in the Hogg case, which was that the validity of a judge's signature on the back of a ballot cannot be questioned, in a recount proceeding, by parol evidence or by evidence extrinsic of the stub book or other "election papers." Applying that holding to the question here, if there is nothing in the stub book or other election papers to show that the person whose name is on the back of the ballot did not serve as a judge of the election, the ballot must be accepted as valid in a recount proceeding. Whether public election records in the office of the county clerk, such as the record of appointments of election officers, are "election papers" within

the meaning of the Hogg case, it is unnecessary for us now to decide, because no effort was made here to attack the signatures on the back of the ballots by resort to such records. There is no statutory requirement that the officers of election sign the stub book, and nothing in the Hogg case would require that voters be disfranchised by reason of the lack of such signing.

We now take up the contentions of Howard, which have to do with the decisions of the trial judge on various individual ballots. We will refer to the ballots by their exhibit numbers.

■ Howard's first contention concerns certain ballots on which there was some question as to the voter's intent to indicate a choice in the county judge's race. Ballot No. 21, which was not counted, had an ink blot in the square opposite Howard's name, and pencil crosses in one square in each of the other races. It appears to us that the voter attempted to use the stencil in the judge's race (which was first on the ballot), and upon finding that the stencil made a blot from too much ink, he resorted to a pencil to complete marking the ballot. We think this ballot should have been counted for Howard, and Rowland so agrees in his brief.

■ Ballots Nos. 3, 89 and 135, which Howard contends should not have been counted for Rowland, were somewhat similar to No. 21 in that they had an ink blur in the square in the county judge's race, with reasonably clear stencil marks in the other races. We think they properly were counted for Rowland.

■ Howard's second contention concerns two ballots on which there is a question involving the judge's signature on the back. He argues that Ballot No. 11 should not have been counted for Rowland, because the person whose name is signed on the back of the ballot as a judge of the election is not one of the persons listed in the stub book as an officer of election, but is a person shown in the stub book as a voter to whom a ballot was issued. Rowland concedes that this ballot should not have been counted.

■ Ballot No. 134, which was counted for Rowland, bears the name "Lily Bunch" on the back. Most of the other ballots from the same precinct bear the name "Lily Moses" on the back, and the stub book indicates that Lily Moses was an election officer in that precinct. Under Hogg v. Howard, Ky., 242 S.W.2d 626, this ballot should not have been counted for Rowland, and he so concedes in his brief.

Howard's remaining contentions have to do with ballots which were questioned on the ground that they bore distinguishing marks, in violation of KRS 118.320, by means of which the identity of the voter might be determined. Howard maintains that 10 ballots voted for him were erroneously rejected by the lower court because of alleged distinguishing marks, and that 25 ballots voted for Rowland should have been rejected because of distinguishing marks.

■ Before undertaking a discussion of the individual ballots, we think it may be useful to review some of our decisions dealing with the question of distinguishing marks. In Campbell v. Little, 251 Ky. 812, 66 S.W.2d 67, the basic rule was laid down that a mark "reasonably calculated" to enable identification of the voter will invalidate the ballot, regardless of the voter's intent in making the mark or permitting it to be made. In Wright v. Crase, 273 Ky. 76, 115 S.W.2d 318, it was held that red pencil crosses in the squares, instead of stencil crosses, would not invalidate a ballot. In Brown v. St. Clair, 311 Ky. 24, 223 S.W.2d 173, it was held that ballots marked in the squares with a pencil cross or check mark, or with the wrong end of the stencil, were not invalid under the prohibition against distinguishing marks. It also was held in the St. Clair case that the mere tearing of a ballot was not reasonably calculated to enable identification.

The case principally relied upon by Howard is Patton v. McWhorter, 292 Ky. 443, 166 S.W.2d 997, in which eight ballots were held to be invalidated because they bore pen

and ink crosses to the right of the square in which the voter had marked his vote with the stencil. All eight ballots were voted for the same man, and the pen and ink marks were similar on each of the ballots.

A case strongly relied upon by Rowland is Snowden v. Flanery, 159 Ky. 568, 167 S.W. 893, in which there were 43 ballots bearing various kinds of marks which might be considered to be distinguishing marks. However, the ballots were distributed among a number of precincts, some were voted for one candidate and some for the other, and there was no general pattern or design to the marks. Under these circumstances the court considered it improbable that the marks were designed for the purpose of enabling identification.

■ From our examination of the foregoing decisions we come to the conclusion that a mark on a ballot should not be considered as "reasonably calculated" to enable identification of the voter unless either the mark is such that any person could identify the voter, or is such as to indicate a plan or scheme involving the use of a code by which a particular person could identify the voter. If there is some reasonable, legitimate explanation for a particular kind of mark being on a ballot, we would be reluctant to classify it as a distinguishing mark.

With this conclusion in mind we will consider first the ballots which Howard contends should have been counted for him.

■ Four ballots voted for Howard had written upon them, in pencil, the name "Ted R. Turner," with a square and cross mark. This probably would constitute a distinguishing mark, except for the fact that some 100 other ballots had written upon them the words "Ted R. Turner for Tax Commissioner," with a square and cross mark, thus indicating that many voters were attempting to cast a write-in vote for Turner for tax commissioner. Three ballots voted for Rowland also bore only the name "Ted R. Turner". Under these circumstances, there is nothing to indicate a plan or scheme of one candidate or the other to use the writing-in of Turner's name as a

device of identification, and there is a perfectly reasonable and logical explanation for the name being on the ballots. We think the four ballots should be counted for Howard.

■ Ballot No. 4 had written upon the back, in pencil, the words "void ballot". The ballot was voted for Howard in the judge's race, and for *two* candidates in the sheriff's race, which was next on the ballot. It was not voted in the other races. The reasonable assumption is that this ballot was returned to the election officers by the voter, after he had spoiled it in the sheriff's race, and it was marked "void ballot" by the election officers. We think it properly was not counted.

■ Exhibit No. 157 consists of three ballots, all of which have the word "sworn" written in ink on the margin. Three voters in the precinct in which these ballots were cast made affidavits under KRS 118.250, which affidavits were placed with the election papers. It seems likely that the three ballots marked "sworn" were those cast by the three voters who made affidavits, and since the ballots all were cast for Howard the identity of the voters can thus be determined. It was proper not to count these ballots.

■ Ballot No. 41 had a cross mark on the back, in the same color ink as the judge's signature. It appears to have been made deliberately. The ballot was properly rejected.

■ Ballot No. 75 has a peculiar little light blue ink mark in the upper left-hand corner, and some ink dots opposite three of the squares in which a stencil was placed. The ink mark has no identifiable shape, and the dots, when considered in connection with a number of other ballots bearing dots which we will discuss presently, do not indicate a definite pattern or plan of marking. We think this ballot should have been counted for Howard.

■ We will now discuss the 25 ballots counted for Rowland which Howard con-

tends should be rejected because of distinguishing marks. Thirteen of these ballots, Exhibits Nos. 60, 71, 77, 79, 95, 99, and 127, have ink dots to the right of some or all of the squares in which a stencil mark was placed. These ballots come from various precincts, and on some there is a dot for every cross mark, while on others there are dots for only a few of the cross marks. Some fifteen other ballots which were cast for Howard bear similar dots. In view of the fact that the ballots are distributed among the precincts, and substantially the same number were voted for Howard as were voted for Rowland, we are not convinced that the dots were placed in accordance with an agreed code or pursuant to a plan or scheme. We think the court properly counted the thirteen ballots in question.

Ballot No. 39 has a smeared stencil mark in the upper right-hand corner. It appears that the voter was testing the stencil and attempted to eradicate the mark with his finger. Under Brandenburg v. Hurst, 289 Ky. 155, 158 S.W.2d 420, this was a good ballot.

Ballot No. 62 bears the name of Rowland, with a cross, written in pencil on the bottom of the ballot. Under Kash v. Hurst, 189 Ky. 233, 244 S.W. 757, this ballot should not have been counted.

Ballot No. 78 has a faint light blue ink cross near the center of the front. We think it should not have been counted, for the reasons heretofore given concerning Ballot No. 41.

Ballots Nos. 82, 95, 96, 98 and 159 are ones which have extra stencil marks near the squares, or are marked in some of the races with the butt of the stencil, or are marked in some races with the stencil and in others with a pencil, or have blurred marks in some of the squares. There is nothing about them to indicate any plan or scheme by which identification could be made. In addition, Ballot No. 98 has a small jagged blue ink mark in a lower corner, comparable to the mark on Ballot

No. 75, hereinbefore discussed. We think these ballots properly were counted.

Ballot No. 139 has some faint, indistinct and illegible word written on the lower part of the ballot. The word could be a pick-up blot from the stub book. The calculation of identification is remote, and it was proper to count the ballot. Ballot No. 144 also has a word written on the margin in a handwriting difficult to decipher, but this word appears to have been written deliberately and we think this ballot should not have been counted.

Summarizing our decisions on all of the ballots concerning which Howard has made a contention, we find that he will gain a total of 11 votes, either by counting ballots for him or by not counting them for Rowland.

We will now consider Rowland's contentions as to ballots erroneously counted for Howard, or erroneously not counted for Rowland, which could offset the gain for Howard.

Three ballots bearing the name "Ted R. Turner" (Nos. 12, 55 and 62) should have been counted for Rowland.

Ballots Nos. 5, 9, 16, 19, 24, 35 and 165 are similar to Ballots Nos. 82, 95, 96, 98 and 159 (objected to by Howard) in that they are marked in a haphazard manner, with blurs, blots, stencil butts, etc. We think they should have been counted for Rowland.

Ballot No. 94 bears the letter "K" in ink on the back. For the reasons hereinbefore given with respect to Ballot No. 41, this ballot should not have been counted for Howard.

Our decisions on the three groups of ballots just discussed will result in a gain of 11 votes for Rowland, thus offsetting the gain for Howard and leaving Rowland the winner by at least one vote. This makes it unnecessary for us to discuss other contentions of Rowland, although we deem it proper to say that we have considered them

**286**

and are of the opinion that the court erred with respect to Ballots Nos. 34, 57, 69, 113, 145, 146, 158, 162, 175, 118, 161, and 47, which would make Rowland the winner by eight votes.

The judgment is affirmed.